**NATIONAL LABOR RELATIONS BOARD v. WEST OHIO GAS CO.**

**No. 10766.**

United States Court of Appeals
Sixth Circuit.

Feb. 21, 1949.

---

John H. Hull, Jr., of Cleveland, Ohio (David P. Findling, Ruth Weyand and Thomas McDermott, all of Washington, D. C., on the brief), for petitioner.

Paul O. Boesel, of Lima, Ohio, (Paul O. Boesel, of Lima, Ohio, of counsel; Bentley, Neville, Cory & Boesel, of Lima, Ohio, on the brief), for respondent.

Before HICKS, Chief Judge, and ALLEN and McALLISTER, Circuit Judges.

ALLEN, Circuit Judge.

The National Labor Relations Board prays for enforcement of its order finding (1) that respondent had coerced its employees in the exercise of their rights under Section 7 of the National Labor Relations Act, 29 U.S.C.A. § 157; (2) that it had discriminated against Ralph Engle in discharging him for union activities; (3) that it had raised wages in order to forestall union organization; and (4) that it had threatened economic reprisal against employees active in the union. The usual cease and desist order was issued in accordance with the findings.

Prior to 1942 there was an independent union among the respondent's employees. After 1942 the A. F. of L. was certified as bargaining representative, and in January, 1945, as the result of an election, a local union, member of the C. I. O., was certified as exclusive bargaining agent. The plant at that time employed some 42 men. A contract was executed between respondent and the union covering all points in dispute between respondent and the men, except checkoff, maintenance of membership, and wages and hours, and running from January 26, 1945, to January 26, 1946. The disputed points were submitted to the National War Labor Board, which on December 19, 1945, issued its recommendations. Respondent in no way opposed the organization under either of these unions. This is uncontradicted. Interest in the C. I. O. union declined after

its certification. After June, 1945, only two of the 23 members paid dues, and for July only, and no quorum was ever secured for a meeting. Witnesses both for the Board and for the respondent testified that the members in general wished to withdraw from the union. There was no testimony to the contrary.

On December 27, 1945, the respondent called a meeting with the negotiating committee of the union to read the recommendations of the National War Labor Board. These included in their principal features maintenance of membership, the checkoff, no change in wages, and time and a half for overtime. It was also recommended that the foregoing terms be incorporated in a written contract between respondent and the union. The four members of the negotiating committee, including the president and secretary, said that they wished to get out of the union. A written resignation of withdrawal was proposed, and the president and secretary of the union started to draw such a paper. The attorney for respondent suggested that the petition refer to the recommendations of the National War Labor Board, and the respondent's president suggested that if a petition for withdrawal were circulated a second paper permitting a vote in favor of retention of the union should also be submitted. This was done, a secretary of the respondent typing the two petitions. The petitions were circulated by the president and secretary of the union, and every member of the union with the exception of one who could not be contacted signed the petition for withdrawal. After this had been done the men in a body conferred with respondent's president and asked for a raise in wages. This request was complied with on or about January 30, 1946, as soon as a reorganization within the employer corporation was consummated, the raise being voted by a new board of directors, in which the majority were new men, and from out of the state.

■ The order of enforcement must be denied. There is no substantial evidence that the respondent, in assisting in the preparation and circulation of the petition, the proposal for which emanated from the union's own members and the decision for which had been voluntarily made by the employees long previous to the meeting of December 27th, interfered with the freedom of choice of the employees. The assistance was requested by the men, and the submission of both sides of the question was suggested and secured by the respondent. This is the antithesis of coercion. The recommendations of the War Labor Board were read in toto at this meeting and discussed, and there is no substantial evidence that the discussion misled the men and caused them to decide to withdraw from the union. The union was already defunct, every one of its 23 members being long in arrears for payment of dues, and the choice registered on the petitions had already been made. After being meticulously instructed to vote either for withdrawal or for retention of the union, the entire membership, with the exception of one who could not be reached, voted to withdraw.

■ A similar conclusion is necessitated as to the wage increases. The employees of their own accord had withdrawn from the union and none existed. The respondent therefore did not bypass any organization authorized to bargain for the men. Cf. National Labor Relations Board v. J. H. Allison & Co., 6 Cir., 165 F.2d 766, certiorari denied 335 U.S. 814, 69 S.Ct. 31. The National War Labor Board recommended that the guaranteed wage should not be increased, but that overtime should be paid. The various increases, based partly upon experience and partly on merit, were made by a new board of directors evidently because of a change in policy. There is no substantial evidence to the contrary.

The finding of the Board that respondent was hostile to the union is entirely unsupported by this record. The testimony of 16 witnesses, employees who appeared on behalf of the Board and the respondent, including Engle, who was found by the Board to have been discharged for union activities, is categorically to the contrary, and is undisputed. Typical is the question addressed to Albert Jones:

"Now, I will ask you, Mr. Jones, whether any of the officers or officials or superintendents of the Gas Company ever said anything to you to influence you either

to get out of the Union or stay out of it?
"A. No, sir."

■ There is no substantial evidence of threat of economic reprisal against any employee engaged in union activities. The isolated remark attributed to the general superintendent in March, 1946, by a man who was employed only five days, to the effect that there would never be a union around any company where the superintendent worked, is on its face hardly credible, in view of the fact that the superintendent had been working with two unions at respondent's plant for the past five years. The superintendent denied making the statement. Assuming it to have been made, there was no evidence that it was coupled with any threat against any employee or organization. Such an isolated statement, in absence of circumstances evidencing coercion, does not constitute violation of the statute. Martel Mills Corp. v. National Labor Relations Board, 4 Cir., 114 F.2d 624; E. I. du Pont de Nemours & Co. v. National Labor Relations Board, 4 Cir., 116 F.2d 388; Quaker State Oil Refining Corp. v. National Labor Relations Board, 3 Cir., 119 F.2d 631; Wilson & Co. v. National Labor Relations Board, 7 Cir., 120 F.2d 913.

■ A similar finding is required with reference to the discharge of Ralph Engle. Engle had been neither an officer nor an organizer of the union. At the time of his discharge the union had been disestablished. The substantial evidence reveals that he was discharged because he was dilatory and inattentive to his work as keeper of the storeroom. Frequent complaint had been made by the men that he had delayed them in getting out to their work by not being at his post to give them supplies. The Board found that Engle was given no prior warning that his inefficiency would cause his discharge. The superintendent testified that on numerous occasions he reprimanded Engle for not being on hand to take care of the men. The record shows that on certain occasions a crew of eight or ten men was held up in starting out with their necessary supplies because Engle was not on hand. Engle did not deny that about a month before he was discharged Warren, because of a complaint from an-

other employee, specifically cautioned him about being on the job and taking care of the men so they could get out to do their work. At first he said, "I don't recall that at all;" but in answer to the question, "It could have happened?" he said "That's quite possible." It was testified that Engle would keep men waiting while he was doing his paper work. He admits that he would go ahead and finish his report before supplying the parts that had been requested, and that he knew a certain foreman had his whole crew held up until they could get their parts and report on the job. He admits that Warren on a number of occasions mentioned to him that he had been leaving the job early. Engle did not deny having been reprimanded by Warren because of these matters. On the particular day when he was discharged, Warren had seen him three times in the meter repair room where he had no regular business. Engle admits that he may have been there three times that day, and in effect admits that Warren had warned him about taking better care of the men in giving them their supplies. It stands, therefore, uncontradicted on the record that Warren did in effect give Engle a prior warning, because such a warning is necessarily implicit in repeated reprimands.

Engle's union activities consisted of writing to the agent of the national union to arrange a meeting in Lima, conferring with the agent to plan the meeting, and in speaking to three of the 23 union members about this meeting. There is not a scintilla of evidence in the record to the effect that the respondent was advised of these trivial union efforts. There is no substantial evidence in support of the finding that Engle was discharged for union activities.

■ It is the established rule that the employer may hire and fire at will so long as the action is not based upon opposition to union activities. National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 45, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352; Phelps Dodge Corp. v. National Labor Relations Board, 313 U.S. 177, 186, 61 S.Ct. 845, 85 L.Ed. 1271, 133 A.L.R. 1217; National Labor Relations Board v. Blue Bell-Globe Mfg. Co., 4 Cir., 120 F.2d 974; American Smelting & Refin-

ing Co. v. National Labor Relations Board, 8 Cir., 126 F.2d 680; National Labor Relations Board v. Montgomery Ward & Co., 8 Cir., 157 F.2d 486.

The petition for enforcement is denied.