**UNITED STATES STEEL CORPORA-TION, Appellant,**

v.

**Sim L. NICHOLS, Appellee.**

No. 12332.

United States Court of Appeals
Sixth Circuit.

Jan. 25, 1956.

James C. Davis, Cleveland, Ohio (Laurence E. Oliphant, Jr., Squire, Sanders & Dempsey, Cleveland, Ohio, on the brief), for appellant.

Arnold S. Levin and Jacob Levin, Lorain, Ohio (Levin & Levin, Lorain, Ohio, on the brief), for appellee.

Before ALLEN, MARTIN and MILLER, Circuit Judges.

SHACKELFORD MILLER, Jr., Circuit Judge.

The appellee, Sim L. Nichols, filed this action for damages resulting from an alleged breach of a collective bargaining contract between the Union, of which he was a member, and the National Tube Company, by which he was employed. Following the merger of the National Tube Company with the United States Steel Corporation, the Steel Corporation was substituted as defendant. The case was heard by the District Judge without a jury. The District Judge gave judgment for the appellee in the amount of $25,000, from which this appeal was taken.

The facts for the most part are undisputed.

Nichols was first employed by the Company at its Lorain, Ohio, Plant on August 22, 1918, and thereafter was continuously employed from February 20, 1919 until May 31, 1946. He was one of the employees for whom the United States Steelworkers of America was the duly certified collective bargaining agent under the National Labor Relations Act, 29 U.S.C.A. § 151 et seq. On March 13, 1945, the Union entered into a collective bargaining contract with the Company which was in full force and effect until after May 31, 1946. Under the terms of this contract, employees such as Nichols could be discharged only for proper cause and through a procedure set out in the contract. On May 17, 1946, the Company notified Nichols that having attained the age of 65 years he was being retired on May 31, 1946 in accordance with the Company's plan of compulsory retirement. Pursuant to such notice, Nichols' employment was terminated effective May 31, 1946.

Nichols filed this action on July 17, 1950, charging in his amended complaint that the Company did "without proper cause or legitimate reason therefor discharge the plaintiff on May 31, 1946," and that said discharge was "for the reason that plaintiff had then attained the age of 65 years and for no other reason." The amended complaint also alleged that at the time of the discharge Nichols was physically fit and able to perform his work, and that the discharge constituted a breach of the contract of May 13, 1945.

The appellant, by its answer, admitted that the Union was the duly certified bargaining agent of the appellee, the execution of the contract of March 13, 1945, that the contract was in effect until after May 31, 1946, and that under the terms of the contract the plaintiff could be discharged only for cause and through the procedure specified in the contract. It claimed, however, that the appellee was not discharged, but was retired on May 31, 1946, in accordance with a plan of compulsory retirement of its employees which it had put into effect many years before the execution of the collective bargaining contract of May 13, 1945, and which it had openly enforced upon a uniform and non-discriminatory basis both before and after March 13, 1945, with the knowledge of the Union; that the ap-

pellee was barred from bringing this action because the collective bargaining contract provided a detailed administrative remedy, by way of a grievance and compulsory arbitration procedure, which the appellee had not used and which constituted a condition precedent to appellant's right to invoke the jurisdiction of the Court; and that appellee's claim was settled by the execution of an agreement on March 1, 1950, between the appellant and the Union as his bargaining agent.

Appellee by his reply denied that prior to May 31, 1946, there was in force and effect at appellant's plant at Lorain, Ohio, a plan of compulsory retirement of employees. While admitting that he had not invoked the grievance and arbitration procedure provided by the contract, he alleged that the appellant had always taken the position that compulsory retirement of an employee at the age of 65 was a right retained by the Company which was not subject to the arbitration and grievance procedure provided by the bargaining contract, and that the Board of Conciliation and Arbitration established by the contract was without jurisdiction in the matter, by reason of which it was useless procedure on his part to attempt to arbitrate the claim.

The District Judge was of the opinion that a bargaining agreement expressed the complete obligations and rights of the parties relating to employees, including conditions and tenure of employment and conditions respecting means for termination of employment; that if some undisclosed rights in respect to employment are not included, or without notice to the employee are withheld, on the theory that they are not the subject of bargaining the contract does not express the full coverage of employment rights; that if management intended to retain a compulsory retirement practice it should have reserved that method of termination of employment in the contract or notified its employees of its purpose and intention in respect of such policy; and that it was not to be supposed that the employer could withhold an employ-

ment right not recorded or reserved by the contract. He found that while there was evidence that the appellant had a somewhat flexible retirement policy from 1931 to 1941, the policy of compulsory retirement at 65 was adopted in 1941 and was suspended or modified during the war emergency; that no representative of the Company or of the Union notified the appellee of such policy before the notice on May 17, 1946; that there was not sufficient evidence to charge the appellee with knowledge of the existence of the policy or to support a claim of his acquiescence in any such policy; and that the appellee was not bound by the acquiescence of Union leaders or representatives in such a policy which was not brought to his knowledge. He ruled that there was no question that the word "discharge" had a different meaning than "compulsory retirement"; that the appellee was not "discharged" in the usual and ordinary sense of the term; that the legal and practical effect of compulsory retirement was the same as a discharge and that appellee's employment was effectively and forcibly terminated without any cause expressed or contemplated by the labor agreement; and that there was no contractural ground upon which appellant could base the forcible termination of appellee's contract. On the basis of these rulings he entered judgment for the appellee computing damages on the basis of what he would have earned under continued employment during his life expectancy of approximately seven years, credited by what amounts he had been able to earn since his retirement. Nichols v. National Tube Co., D.C., 122 F.Supp. 726.

The first question presented by the foregoing analysis of the rights of the parties is whether it was necessary for the appellant in order to keep in effect its policy of compulsory retirement for age to provide in the contract for the retention of such right. That requires a consideration of the fundamental principles of the law of master and servant as changed or affected by the National Labor Relations Act.

■ The relationship of master and servant or employer and employee is not dependent upon a collective bargaining contract. It has existed for innumerable years, long before the origin of the modern-day collective bargaining agreements as provided and made effective by the National Labor Relations Act. The common law rights inherent in such relationship still exist except to the extent that they may be modified by legislation or by the specific contract between the employer and the employee. One of such common law rights is the right of the employer to select and hire his employees and to terminate the employment at will. That right was not abridged by the National Labor Relations Act or by any other statute applicable to the present case. N. L. R. B. v. Jones & Laughlin Steel Corp., 301 U.S. 1, 45, 57 S.Ct. 615, 81 L.Ed. 893; N. L. R. B. v. West Ohio Gas Co., 6 Cir., 172 F.2d 685, 688; N. L. R. B. v. Tennessee Coach Co., 6 Cir., 191 F.2d 546, 550; N. L. R. B. v. Superior Co., 6 Cir., 199 F.2d 39, 42.

■■ It was the purpose of the National Labor Relations Act, as amended by the Labor Management Relations Act, that the execution of collective bargaining agreements between employers and employees would result through the process of good faith collective bargaining. It is well settled, however, that the Act does not compel the making of any agreement whatsoever between the employer and employees, nor does it regulate the substantive terms governing wages, hours and working conditions which are involved in the bargaining and about which an agreement may be reached. N. L. R. B. v. Jones & Laughlin Steel Corp., supra, 301 U.S. at page 45, 57 S.Ct. at page 628; N. L. R. B. v. American National Insurance Co., 343 U.S. 395, 402, 72 S.Ct. 824, 96 L.Ed. 1027; N. L. R. B. v. United Clay Mines Corp., 6 Cir., 219 F.2d 120, 124–125. The Labor Management Relations Act in defining the phrase "to bargain collectively" expressly provides * * * "but such obligation does not compel either party to agree to a proposal or require the making of a concession." Sec. 158(d), Title 29, U.S.C.A. It would seem to logically follow that the common law right on the part of the employer to select his employees and to terminate their employment at will continues to exist except to the extent that it may be modified by the bargaining contract with the Union. Instead of making this right dependent upon a provision to that effect in the contract, it is a right which an employer normally has unless it has been eliminated or modified by the contract. Accordingly, we are not in agreement with what we construe to be the District Judge's conclusion of law that since there was no provision in the collective bargaining contract authorizing the termination of appellee's employment by reason of age, such right did not exist.

■ The District Judge reached that conclusion upon the theory that the bargaining agreement expressed the complete obligations and rights of the parties relating to employees, including conditions and tenure of employment, which in turn included termination of employment, and that the employer should not be permitted to withhold an undisclosed employment right not recorded or reserved by the agreement. Although it may be the theory of the law that collective bargaining may at times or eventually accomplish that result, the express language of the Labor-Management Relations Act, Sec. 158(d), Title 29, U.S.C.A., and the authorities above referred to make it clear that a collective bargaining agreement does not necessarily express the full coverage of employment rights. It covers such matters only as the parties may have been able to agree upon and leaves unresolved such issues as the parties may not have been able to agree upon and with respect to which the law does not require a concession by either party. As hereinafter pointed out, the evidence in this case shows that compulsory retirement was one of the issues between the Company and the Union upon which no agreement could be reached. Involving such factors as age of retirement, rights thereafter

based on length of service, and the adequacy and financing of a pension plan to be linked with compulsory retirement, it was a matter of importance to both the Company and the Union furnishing a large area for discussion and negotiation. A failure to reach an agreement on this subject would not prevent the execution of a collective bargaining agreement covering most of the standard issues usually included in such agreements. N. L. R. B. v. Nash-Finch Co., 8 Cir., 211 F.2d 622, 626–627. The Union was within its rights in refusing to agree to a compulsory retirement policy, which the evidence shows was presented by the Company in collective bargaining sessions, without it being linked to an adequate and satisfactory pension plan. But such failure to reach an agreement did not deprive the Company of its common law right to hire and fire at will until such an agreement was reached. Williams v. Jacksonville Terminal Co., 315 U.S. 386, 402, 62 S.Ct. 659, 86 L.Ed. 914. Accordingly, instead of searching for a provision in the contract authorizing termination of employment by reason of age, we think it is necessary to determine from a consideration of the terms of the contract whether termination of employment by reason of age was prohibited by the contract. N. L. R. B. v. Nash-Finch Co., supra. This requires the application of the usual rules involved in the construction of a written instrument.

■ Appellee throughout his argument contends that the contract provides that employment could be terminated only for proper cause and that reaching the age of 65 is not proper cause. If the contract so provided, that might well be the end of this case. But we do not find such a provision in the contract. The contract deals with "discharge for proper cause," not "termination of employment" for proper cause. Unless the word "discharge" is considered to be the same as "termination of employment" or compulsory retirement, the contention has no merit. Such a construction, however, was expressly rejected by the District Judge, who said in his opinion: "I

think there is no question that the word 'discharge' has a different meaning than 'compulsory retirement' and I do not hold that the plaintiff was discharged in the usual and ordinary sense of that term." We think this conclusion necessarily follows from a consideration of the express terms of the contract.

The contract plainly recognizes the fact that "discharge" is something different from "termination of employment." For example, Sec. 7(F), dealing with vacations, provides—"No employee shall be eligible to receive any benefits under this Section if he *resigns* from the employment of the Company *or* if he is *discharged*." (Emphasis added.) Sec. 8, dealing with Seniority, provides: "Probationary employees may be *laid off* or *discharged* as exclusively determined by Management, provided that this provision will not be used for purposes of discrimination because of membership in the Union." (Emphasis added.)

The distinction is also clearly expressed in Section 10 dealing with rights of Management. Section 10 reads as follows: "The Management of the works and the direction of the working forces, including the right to hire, suspend or *discharge* for proper cause, or transfer, and the right to *relieve employees from duty* because of lack of work *or for other legitimate reasons,* is vested exclusively in the Company, provided that this will not be used for purposes of discrimination against any member of the Union." (Emphasis added.) This provides for the termination of employment in two different ways: (1) Discharge for proper cause, and (2) the right to relieve employees from duty because of lack of work or for other legitimate reasons. Obviously, the Company was not restricted in its right to terminate employment to a situation involving "discharge for proper cause."

The conduct of the parties over a period of years clearly shows that Section 10 was not intended by the parties to cover the question of compulsory retirement for age. Each of the collective bargaining contracts of March 17, 1937,

April 1, 1941, and September 1, 1942, contained a section dealing with rights of Management in identical language to that used in Section 10 of the contract now under consideration. While those contracts were in force the Company continued to enforce its retirement policy originally initiated in 1931. In June, 1938, grievances were filed by employees Svitkovich and Muffly by reason of their having been laid off because they were over 65. They were not pressed to a conclusion. During 1941 and 1942, Union representatives meeting with representatives of management unsuccessfully protested the enforcement of the rule by the Company. During 1942, grievances of employees Kordelshi, Byrer and Hermann, based on retirement for age, were disposed of favorably to the Company's policy. In several meetings in 1943 the Company defended and maintained its position. In the negotiations leading up to the 1942, 1945 and 1947 contracts the subject of compulsory retirement was one of the issues which the Company tried to have expressly covered by the contract, but upon which the Company and the Union were unable to reach an agreement. No contention was made that such an issue was already covered by the existing section dealing with rights of management. Although appellee's evidence was to the effect that the Union never acquiesced in the Company's policy, the evidence also shows without question that over a period of years prior to the March 13, 1945 contract such a policy was actually in force and effect and was never successfully challenged by the Union.

The construction which the parties themselves gave to the 1945 contract strongly supports the conclusion that the contract did not cover the question of retirement for age. In August, 1945, after it became effective, 245 employees, who during the war years had been re-hired after having been retired, were again retired. Between that time and October, 1, 1946, 143 additional employees were retired because they were over 65 years of age. Only one griev-ance was filed by said 388 employees so retired. Although appellee was retired on May 31, 1946, he filed no grievance, and did not institute this action until more than four years later.

At the Constitutional Convention of the United Steel Workers of America, held in 1948, to which the Local Union sent its President as a delegate, the Company's compulsory retirement program was brought up as a subject of discussion on the floor of the convention, with particular reference to the inadequate pension system in effect for those so retired. The Union took the position that steps should be taken by the process of collective bargaining available to the Union to correct the situation. President Phillip Murray urged upon the delegates to make it their business "at the expiration of your wage agreement—and in your next negotiations also * * * to protect the interests of the aged, the decrepit, and the sick and the lame." The conclusion seems inescapable that while the Company and the Union were never in agreement about the Company's policy of compulsory retirement, the Union nevertheless recognized that it was not covered by the 1945 contract and was a matter to be included in the collective bargaining negotiations in the future. Williams v. Jacksonville Terminal Co., supra, 315 U.S. 386, 401, 62 S.Ct. 659.

Against such a background of custom, protests and negotiations it can not be said that the issue of compulsory retirement was inadvertently overlooked in executing the March 13, 1945 contract, or, as we construe the ruling of the District Judge, that the failure to specifically cover the issue in the 1945 contract should be construed as an implied agreement by the Company to abandon the policy. N. L. R. B. v. Nash-Finch Co., supra, 8 Cir., 211 F.2d 622, 626–627.

■ Nor can we concur in the analysis of the contract by the District Judge that unless so construed it would enable the Company to withhold from the employees some undisclosed rights in respect of employment which the contract was intended to cover. The foregoing

background completely negatives the contention that the Company's compulsory retirement policy was undisclosed to the Union. We believe it is immaterial whether individual employees knew of the policy. The Union was their authorized bargaining agent and executed the contract on their behalf. Whatever rights the appellee has to protect him against discharge at will are derived from the contract. If he seeks rights under the contract he must also accept its obligations. His present action is based upon the contract. His amended complaint alleges that his discharge constituted a breach of the contract of May 13, 1945. In seeking a recovery under the contract, he is bound by the terms of the contract, whether they were expressly authorized by him at the time of its execution or not. Restatement, Agency, Secs. 96, 97; Clews v. Jamieson, 182 U.S. 461, 483, 21 S.Ct. 845, 45 L.Ed. 1183.

The District Judge ruled that the appellee was not "discharged in the usual and ordinary sense of that term." However, he gave judgment for the appellee upon the ground that appellee's "employment was effectively and forcibly terminated" in breach of his contract rights, holding that the legal and practical effect of compulsory retirement was the same as a discharge. It is true, as pointed out by the District Judge, that the end result of discharge and compulsory retirement was the same, namely, termination of employment. But, in dealing with rights and obligations under a written instrument we cannot ignore distinctions expressly made by the wording of the instrument merely because the end result is the same. For example, a man may be killed in an automobile accident or may die from natural causes. Although the result is death in either case, the exact manner of meeting death is controlling in determining whether there is any recovery under an accident insurance policy. So, in the present case, it is not decisive that appellee's employment was terminated. Appellee has a cause of action under the written contract only if his employment was terminated by a discharge without cause.

■■ The Company would not be justified in "discharging" an employee under a so-called retirement policy if the alleged retirement policy was actually non-existent, or was discriminatorily enforced in order to effect what was actually a discharge under the guise of retirement, or was in substance merely a subterfuge to avoid its contractural obligation against discharge. United Protective Workers of America v. Ford Motor Co., 7 Cir., 194 F.2d 997, 1003. The retirement policy in the present case did not include any of those vitiating factors. The District Judge found as a fact that the policy of compulsory retirement at 65 was adopted in 1941. He did not find its provisions to be unreasonable. It was not enforced in a discriminatory manner. The Union officials knew about the policy and its enforcement at the time of the execution of the contract. Since the contract did not prohibit its continued enforcement, we find no breach of appellee's contractural rights in enforcing the policy as to him.

There seem to be very few reported decisions involving the exact issue in this case. The ruling in N. L. R. B. v. Nash-Finch Co., supra, 8 Cir., 211 F.2d 622, appears to be in accord with the ruling in this case. On the other hand, appellee relies strongly upon United Protective Workers of America v. Ford Motor Co., supra, 194 F.2d 997, reported on second appeal at 7 Cir., 223 F.2d 49. Some general language in the first opinion of the Court of Appeals, 194 F.2d at page 1003, supports appellee's position. However, on that appeal the Court had before it only the allegations of the complaint to which no answer or other responsive pleading had been filed. The Court ruled, and we believe properly so, that the allegations of the complaint that the Ford Company did " 'dismiss from its services and terminate the employment of' " the plaintiff in violation and breach of the collective bargaining agreement,

stated a cause of action. It pointed out that while the District Court dismissed the complaint on the theory that the Ford Company retired the plaintiff "pursuant to an established plan or policy," there was no pleading revealing such plan. The case was sent back to the District Court to afford the defendant an opportunity to answer the complaint. Following the filing of an answer and a trial in the District Court, the District Judge, in an unreported opinion, ruled that the Ford Company had "not demonstrated that it designed and employed any uniform retirement plan which might have justified" the plaintiff's dismissal, and gave judgment for the plaintiff. This ruling was affirmed on the second appeal. We construe the two opinions together as holding that in the absence of an established, bona fide, uniform retirement plan, the Company could not "discharge" an employee without cause "by the simple expedient of saying that the employee had been retired, and in that manner avoid the consequences of breaching a contract which prohibits discharges except for cause." 194 F.2d at page 1003. We have hereinabove indicated our agreement with such a ruling. The present case presents a materially different situation, in that appellee's retirement was in accordance with a well established, bona fide retirement plan, which was found by the District Judge to have been in operation for a number of years prior to the retirement of appellee.

Our ruling on this phase of the case renders unnecessary a consideration of appellant's other contentions. The judgment is reversed and the case remanded to the District Court for further proceedings consistent with the views expressed herein.

MARTIN, Circuit Judge (dissenting).

I would affirm the judgment of Chief Judge Paul Jones of the Northern District of Ohio upon the basis of the reasoning in his opinion, published in 122 F.Supp. 726, under the title, Nichols v. National Tube Co.