INTERNATIONAL TELEPHONE AND TELEGRAPH CORPORATION, a Maryland corporation, Plaintiff

v.

LOCAL 400, PROFESSIONAL, TECHNICAL AND SALARIED DIVISION, INTERNATIONAL UNION OF ELECTRICAL, RADIO AND MACHINE WORKERS, AFL-CIO, Defendant.

Civ. No. 275-60.

United States District Court
D. New Jersey.
June 23, 1960.

Gilhooly, Yauch & Fagan, James E. Fagan, Newark, N. J., Seyfarth, Shaw, Fairweather & Geraldson, Walter P. Loomis, Jr., Chicago, Ill., of counsel, for plaintiff.

Kapelsohn, Lerner, Leuchter & Reitman, Sidney Reitman, Newark, N. J., for defendant.

MEANY, District Judge.

The plaintiff, International Telephone and Telegraph Corporation, a Maryland corporation, instituted the present suit asking for a declaratory judgment to the effect that a grievance presented to it by the defendant Local for arbitration is non-arbitrable.

Plaintiff is engaged in research and development work and has various plants in the State of New Jersey. The defendant is, and since 1951 has been, the certified recognized bargaining agent for the employees of the plaintiff. Plaintiff and defendant have heretofore entered into collective bargaining agreements, the latest one effective from September 22, 1959 through September 25, 1961. There have been separate agreements for different units of the ITT Laboratories Division but they are essentially of the same tenor and effect.

The basic facts in the dispute are as follows. In or about December, 1959 four employees of plaintiff, all members of the defendant Local, being over the age of 65, were requested by their employer ITT Labs to submit an application for voluntary retirement under the ITT Labs Voluntary and Gratuitous Pension Plans. They were informed that if they refused so to do, their employment would be terminated. They refused to make the requested application and their employment was terminated effective January 1, 1960, and they were paid and accepted pension benefits in amounts provided for by the Company pension plans.

There were two pension plans, one known as the Unfunded Plan, which was the original plan, in effect previous to 1950, and a second known as the Funded Plan, effective January 1, 1950, designed to replace in large measure the Unfunded Plan. Previous to the present situation, on only one other occasion has there been an attempt to terminate employment at retirement age without the consent of the employee involved. The Union in that case objected and the matter went to arbitration in 1947, and the arbitrator found in favor of the Union.

In the contract negotiations which resulted in the current collective agreements, the plaintiff herein proposed a retirement program which provided significantly as follows: "A member shall retire from service on a normal retirement allowance upon reaching normal retirement date." This proposition was rejected by the Union as authorizing compulsory retirement instead of what it contended to be voluntary retirement under the effective provisions of the Company pension plans. The Company representative at the time called attention to Section F. 14 of the Unfunded Pension Plan which provides for compulsory retirement on and after January 1, 1960, at the age of 65. The Union representative retorted that any attempt at compulsory retirement would be resisted as a breach of the collective bargaining

agreement, and would be the subject of arbitration after grievance filed under the terms of the agreement. The sole provision of the bargaining agreement anent the pension plans and their effect is Article XIX, Section 4, which provides "Pensions and death benefits shall be governed by the Company's voluntary and gratuitous pension plans, copies of which are attached hereto as Exhibit 'A' and which shall continue without diminution for the duration of this agreement."

The court has set forth this somewhat sketchy background since both parties rely to some degree on the referential value of the provisions of the pension plans and their effectiveness.

However, the court is concerned more immediately with the question of arbitrability of the grievance as submitted by the Union to the Employer. The employment of the four members of the Union was terminated by the Employer through action of its pension committee which on December 30, 1959 placed them in retirement status, awarding them pensions under the Company's pension plans. Notice of this action was sent to the employees on January 13, 1960. Previous to the action of the pension committee they had been informed that they would be retired on January 1, 1960 as they would before that date have arrived at the age of 65. Upon the involuntary termination of the employment of the four members of the Union, a grievance was submitted reading as follows:

"The Company's action in discharging employees (naming the four referred to) was without justification and is a violation of Article XIV, Sections 1, 2 and 3 of the Collective Bargaining Agreements.

"The Union demands that these people be reinstated immediately and that they be made whole for all losses suffered due to the Company's action."

Article XIV reads as follows:

"Discharges

"Section 1. Discharge of employees for unsatisfactory conduct or performance shall be effected in accordance with the warning procedure set forth below:

"(a) A written notice concerning his deficiency shall be given to the employee concerned.

"(b) If there is no improvement within a reasonable time, the employee shall be given a second written warning notice and will be allowed a sufficient opportunity to improve.

"(c) A copy of each warning notice shall be given to the Union.

"(d) No employee may be discharged based upon two successive written warnings when the interim between the warnings exceeds three months.

"Section 2. The Company shall discuss with the Union the contemplated discharge of an employee before the discharge takes place.

"Section 3. No warning need be given to an employee in the case of discharge for good and sufficient cause requiring summary action. The Union shall be notified immediately of any such discharge."

The grievance and arbitration provisions of the bargaining agreement provide for the processing of grievances and the methods of submitting them to arbitration. The grievance was submitted and the Company denied the grievance on the ground that the employees had not been discharged but rather had been retired under the pension plans.

By letter of February 5, 1960 the Union informed ITT Labs that it was submitting the grievance to arbitration. The Company on February 12th notified the Union that it did not consider the grievance arbitrable and would not submit to arbitration.

The Union on February 17th submitted the grievance to the American Arbitration Association and on February 29th the ITT Labs informed the Association that it did not deem the matter arbitrable and would not participate in the selection of an arbitrator.

The present suit was filed on March 10, 1960 and on March 14, 1960 a consent order was entered in which it was provided that no steps beyond the selection of an arbitrator would be taken in the requested arbitration.

■■ It is so well settled that the question of arbitrability, in the absence of a specific provision by the parties in their collective bargaining agreement to the contrary, is for the courts that no discussion thereon is necessary. In order to pass on this question it is necessary for the court to consider the facts on which the demand for arbitration is made so as to determine whether the issues raised in the grievance are within the confines of the agreement. Cf. Engineers Association v. Sperry Gyroscope Co., etc., 2 Cir., 1957, 251 F.2d 133, certiorari denied 1958, 356 U.S. 932, 78 S.Ct. 774, 2 L.Ed.2d 762. The mere allegation of the existence of a grievance does not of necessity import its presence. There must be facts to support the claim which bring it within the comprehension of the collective bargaining agreement.

■ Here the facts are not in dispute. The four employees were severed from their employment by the action of the pension committee of the ITT Labs and they were so notified. There was no charge of "unsatisfactory conduct or performance" made by the Employer. But the grievance alleged is that the employees were discharged in violation of Article XIV, Sections 1, 2 and 3. To bolster this contention the Union relates Article XIV to Article XVIII which outlines the right of the Company "to lay off employees because of lack of work *or other legitimate reason.*" (Emphasis supplied.) This seems wide of the mark. The grievance is limited to Article XIV, Sections 1, 2 and 3, the basis of which is discharge for the enumerated reasons.

That there is a clear distinction between "discharge" as used in the agreement and "retirement" seems patent and has been attested in the case of United States Steel Corporation v. Nichols, 6 Cir., 1956, 229 F.2d 396, 56 A.L.R.2d 980, certiorari denied 1956, 351 U.S. 950, 76 S. Ct. 846, 100 L.Ed. 1474. The severance from employment in the instant case does not appear capable of being construed as a discharge within the purview of the agreement.

Since the grievance is declared to be founded on a violation of Article XIV, the court is compelled to the conclusion that there is no basis for the allegation of the existence of such a grievance. No circumstance has been shown which would warrant a finding that the application of a retirement fund plan is the equivalent of a discharge for unsatisfactory conduct or performance.

■ The question of the extent and legal interpretation of the pension plans does not seem to have been made the subject of arbitration in the contemplation of the parties to the bargaining agreement. The existence of the pension plans is recognized in the contract and they, were the subject of inconclusive argument between the parties in discussions preliminary to the signing of the agreement. The Local did not see fit to insist on the inclusion of the application of the Funded and Unfunded Plans for Pension as a matter reserved for arbitration, though it might have done so. This conclusion is arrived at with full awareness on the court's part of its finding (in another suit between the parties hereto) that arbitration agreements must be given liberal construction and wide extension. But that must be done within the framework of the bargaining agreement.

Whatever inequity or injustice, if any, may exist in the instant termination of employment has not been provided for in the agreement. Not all situations are foreseeable and new problems not within the comprehension of existing agreements may arise from time to time and be the subject of negotiation in an amended or new contract. Whether, as suggested in the course of argument, the unforeseen difficulty would justify a work stoppage to secure the desired protection, in view of the amicable relations heretofore existent between the parties

hereto, is a debatable question, but it does suggest a field for future adjustment.

This opinion shall serve as findings of fact and conclusions of law.

Let an order be submitted.