**Abram B. CASHNER et al., Plaintiffs-Appellants,**

v.

**UNITED STATES STEEL CORPORATION, Defendant-Appellee.**

**No. 14848.**

United States Court of Appeals
Sixth Circuit.

Feb. 11, 1964.

534

Arnold S. Levin, Lorain, Ohio (Jacob Levin, Levin & Levin, Lorain, Ohio, on the brief), for plaintiffs-appellants.

James C. Davis, Cleveland, Ohio (Laurence E. Oliphant, Jr., Squire, Sanders & Dempsey, Cleveland Ohio, on the brief), for defendant-appellee.

Before WEICK, Chief Judge, and MILLER and O'SULLIVAN, Circuit Judges.

O'SULLIVAN, Circuit Judge.

Plaintiff-appellant Abram B. Cashner and 27 others, all former employees of National Tube Company, brought suit against National Tube asking damages for alleged breach of a collective bargaining agreement between that company and the United Steelworkers of America, CIO. National Tube Company was a subsidiary of United States Steel Corporation, which corporation was substituted as defendant after National Tube was merged into it. The suit alleged that plaintiffs were discharged by the company without cause and contrary to the above mentioned collective bargaining agreement which had been entered into on March 13, 1945. Defendant asserts that the plaintiffs' employment was terminated in accordance with a long established company policy of compulsory retirement at age 65. The employment of all of the plaintiffs was terminated in the years 1945 and 1946. The cause was tried by the District Judge without a jury, and upon findings of fact and conclusions of law he gave judgment for the defendant, dismissing plaintiffs' complaint. Fourteen of the original twenty-eight plaintiffs have appealed.

The issues in this cause are the same as those tried, and on appeal, decided by this Court in United States Steel Corp. v. Nichols, 229 F.2d 396, 56 A.L.R.2d 980 (C.A. 6, 1956), cert. denied 351 U.S. 950, 76 S.Ct. 846, 100 L.Ed. 1474. The parties plaintiff, however, are different. In addition, while Nichols was retired in the month following his 65th birthday, some of the plaintiffs in this case were not retired at age 65. Keeping them on, however, was an emergency measure necessitated by the needs of World War II, and the employees so held over were retired in August, 1945 on the termination

of hostilities. Several of those who were retained beyond the end of the month of their 65th birthday had become 65 in 1945, the year of their retirement.

From our review of the briefs and appendices we are satisfied that, except for differences in the parties plaintiff, the case before us is the same lawsuit discussed in and disposed of by our Nichols opinion. As in Nichols, plaintiffs here rely upon the March 13, 1945 collective bargaining contract between National Tube Company and the United Steelworkers as the basis of their claim that employment could not be terminated except by the terms of that agreement. They likewise cite the company retirement policy as the claimed breach of contract. We held in Nichols that retirement of an employee in conformity with the established policy of the company was not a "discharge for cause" as that language was used in the March 13, 1945 collective bargaining agreement. In so holding we said, however,

"The Company would not be justified in 'discharging' an employee under a so-called retirement policy if the alleged retirement policy was actually non-existent, or was discriminatorily enforced in order to effect what was actually a discharge under the guise of retirement, or was in substance merely a subterfuge to avoid its contractual obligation against discharge." (229 F.2d 402)

Dealing with substantially the same facts as make up the plaintiffs' case at bar, our decision in Nichols was that the proofs there did not disclose that the company's retirement practice was a subterfuge or that it was discriminatorily applied. We said, "the retirement policy in the present case did not include any of those vitiating factors." It would be needless repetition for us to detail here the facts or restate the legal conclusions which led to our decision in Nichols.

Following the Nichols decision the plaintiffs here entered upon extensive discovery and examination of defendant's records for the purpose of establishing that defendant's claimed policy of compulsory retirement did not in fact exist as a uniform practice and was discriminatorily applied as a subterfuge for discharges. The voluminous record which resulted from this effort does not, in our view, present a substantially different case than that before us in Nichols. There was a showing that the company in its own records did not always, in explicit language, assign its claimed retirement policy as the reason for ceasing employment of some of the employees who were terminated at age 65. Other discrepancies, of little importance, were exposed. There were a few cases where individual employees stayed on beyond their 65th year. The retentions and rehiring during the war period of some who had passed 65 were also gone into. But these latter were retired in August 1945 when the critical manpower shortage ended. And there was substantial evidence from which it could be found as a matter of fact, that a policy of retiring its employees at 65 was, with unimportant exceptions, openly and uniformly followed. In his findings of fact District Judge Kalbfleisch said:

"The defendant has proved beyond any doubt that prior to, at the time of, and subsequent to the execution of the collective bargaining agreement of March 13, 1945, there was in existence the alleged compulsory retirement policy and that said policy was pursued uniformly and without discrimination. There is complete absence of any showing that the policy pursued by the defendant was a discharge under the guise of retirement, or that it was in substance merely a subterfuge to avoid defendant's contractual obligation against discharge."

The foregoing findings of fact are not clearly erroneous and therefore cannot be set aside by us. 52(a) F.R.Civ. P. We are satisfied, also, that they are amply supported by the record.

In addition to their claim that the evidence received in the case at bar called

for different factual findings than were before us in the Nichols case, plaintiffs assert that subsequent United States Supreme Court decisions have destroyed the validity of the law announced by Nichols. They cite the June 20, 1960 trilogy of United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403, United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; and United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424. But none of these cases have any application to the question of whether defendant breached its contract with the union. They deal with the necessity of parties to a collective bargaining contract using its grievance and arbitration provisions as a means of resolving disputes. They have relevancy here only to the defendant's secondary defense, to-wit: that plaintiffs or their union should have employed the grievance and arbitration provisions of the March 13, 1945 contract to process their claims. In Steelworkers v. American Mfg. Co., supra, the Court said:

"The union claimed in this case that the company had violated a specific provision of the contract. The company took the position that it had not violated that clause. There was, therefore, a dispute between the parties as to 'the meaning, interpretation and application' of the collective bargaining agreement. Arbitration should have been ordered." (363 U.S. 569, 80 S.Ct. 1347, 4 L. Ed.2d 1409.)

■ We find nothing in the Steelworkers cases or in others cited by plaintiffs to persuade us that we should now overrule Nichols. While the difference in the parties plaintiff prevents Nichols from being res judicata of this case, we are satisfied that we should here follow its law. Cold Metal Process Co. v. E. W. Bliss Co., 285 F.2d 231, 236 (C.A. 6, 1960). We therefore affirm the District Judge's finding that defendant did not, by retiring the plaintiffs, breach its contract with the union or any contract with the plaintiffs.

Defendant asserted and was sustained by the District Judge in its further contention that the grievance and arbitration procedures contained in the collective bargaining contract provided the exclusive remedy for resolution of the issue made by the pleadings in this case. Plaintiffs sought to avoid the force of this defense by claiming that defendant's conduct estopped it from asserting such defense. While we are impressed with the validity of this defense, especially in view of the Steelworkers cases referred to above, our affirmance of the District Judge's finding on the merits obviates the necessity of our considering the question of exclusiveness of remedy.

■ Other claims of error are assigned by appellants. It is clear from plaintiffs' pleadings and proofs in the trial court that they bottomed their case on the alleged breach of the March 13, 1945 collective bargaining contract. In this court, however, plaintiffs' counsel has asserted in one of the "Statements of Questions Involved," a claim that defendant also violated some contractual right of plaintiffs to pensions under what was known as the "United States Steel and Carnegie Pension Fund." Aside from its bare assertion as a question involved, this point is not discussed in plaintiffs' original or reply brief. Argument on the point does not appear until its supplemental brief filed after oral argument of the case. That the subject was not an issue in the trial court is made clear from the following stipulation there made:

"The plan under which pensions have been paid from the Non-Contributory Pension Fund to employees of the United States Steel Corporation and its subsidiaries is now and always has been a purely voluntary provision for the benefit of such employees and does not now and has not ever constituted any contract and does not now confer nor has it ever conferred any legal rights upon any

employee of United States Steel Corporation or any of its subsidiaries to receive pension payments."[1]

We find no merit in the point attempted to be made in this regard and emphasize the procedural impropriety in its presentation to this Court.

In plaintiffs' first brief on this appeal, further recitations of claimed error are contained in No. 9 of the "Statement of Questions Involved." There plaintiffs contend, without argument, in reasons A to I, that a new trial should be granted. The grounds asserted relate primarily to discretionary actions of the District Judge: the handling of counsel's request for further inspection of defendants' records; the Judge's rulings on evidence; his refusal to order a jury trial (even though demand therefor was made long out of time, and apparently was contrary to an agreement between counsel); undue restriction of cross-examination; bias and prejudice of the trial judge; and other errors said by appellants' counsel to be "too numerous to mention." It should be noted here that the evidence and exhibits in this case, tried after our Nichols decision, are presented to us in appendices totaling 1669 pages. These are distilled from a transcript of 4253 pages, and from exhibits running to exhibit 569 for plaintiffs and exhibit YYYYY for defendant. The transcript for this appeal was provided to plaintiffs at government expense.

Beyond the bare recitation of the subdivsions of, "Statement of Questions Involved", No. 9, appellants only purported argument of its points comes at the end of an additional brief, filed by our leave after oral argument. There counsel states:

"The limitations on the length of this brief has made it impossible to adequately present an argument pertaining to the numerous errors. It is necessary to read the entire appendix and the entire transcript to fairly appraise the extent of the

prejudicial errors and bias and prejudice exhibited by the Court against plaintiffs and in favor of defendant."

This observation concludes appellants' briefs which, by our leave, total 126 pages.

We do not consider that an invitation to us to search the voluminous transcript to find support for appellants' unargued claims is proper appellate procedure. To the extent however, that appellants' presentation permits our consideration of, "Statement of Questions Involved", No. 9, we find that its subassignments fail to disclose any reversible error.

Judgment affirmed.

Corporation was incorporated in the Company-Union contract.

---

1. In 1949 following a strike, a pension plan for all employees of United States Steel