**ORDER OF REPEATERMEN AND TOLL TEST-BOARDMEN, LOCAL UNION 1011, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO, Plaintiff,**

**v.**

**BELL TELEPHONE COMPANY OF NEVADA, Defendant.**

Civ. No. 1770.

United States District Court
D. Nevada.

May 19, 1966.

Bissett & Logar, Reno, Nev., Neyhart & Grodin, San Francisco, Cal., for plaintiff.

Richard W. Blakey, of Woodburn, Forman, Wedge, Blakey, Folsom & Hug, Reno, Nev., Pillsbury, Madison & Sutro, San Francisco, Cal., for defendant.

THOMPSON, District Judge.

These cross-motions for summary judgment require decision of whether the termination of Emil Tolotti as an active employee of Bell Telephone Company created an arbitrable dispute within the collective bargaining agreement between plaintiff Local Union 1011 and Bell Telephone.

The agreement establishes a comprehensive scheme for the governance of the industrial relations between the company and its employees. Article 12 of the agreement establishes a grievance procedure for the handling of complaints of individual employees by negotiation between a union representative and company officials. The remedy so provided has been exhausted. With respect to termi-

nated employees, Article 17, in part applicable to our facts, provides:

"In the event any regular employee having two (2) years or more net credited service is hereafter dismissed and the matter is not settled under the grievance procedure as provided in Section 12.1, either party may require that the matter be submitted to arbitration pursuant to the provisions of Article 20, but in such case the decision or action of the Company shall be controlling unless shown to have been made in bad faith and only the question of bad faith shall be the subject of arbitration. If the arbitration award finds that the dismissal was made in bad faith, the employee shall be reinstated on the following basis:

"(a) The employee shall receive his regular rate of pay for time lost, less any amount, other than wages, received from the Company at the time of dismissal, and any amount paid to, or receivable by, the employee as wages in other employment, and as unemployment benefits under any present or future provisions of law for the period since the date of such dismissal."

The procedures for arbitration are prescribed in Article 20 as follows:

"Section 20.1 Except as otherwise provided in this Contract, if a grievance involving the true intent and meaning of any provision of this Contract has been handled in accordance with the grievance procedure of Article 12 (Sections 12.1 and 12.2) and has not been satisfactorily adjusted, the Union, within thirty (30) days after the grievance has been referred for settlement to the General Plant Manager or his authorized representative, or the Plant Manager (Nevada) or his authorized representative, may request that the grievance be arbitrated subject to the following conditions:

"(a) The provisions for arbitration shall apply only to controversies between the Union and the Company regarding the true intent and meaning of any provision of this Contract, or regarding a claim that either party hereto has not fulfilled a commitment made in this Contract.

"(b) The party requesting arbitration shall notify the other in writing of its intention to arbitrate the dispute, setting forth in detail the issue or issues involved, the facts out of which they arose, and the contention of the party requesting arbitration.

"(c) A meeting between the General Plant Manager or his authorized representative, or the Plant Manager (Nevada) or his authorized representative, and the Business Manager of the Union or his representative authorized in writing for this purpose shall be called within twenty (20) days of receipt of such written notice.

"(d) In the event a settlement is not reached within twenty-five (25) days following receipt of notice of intention to arbitrate, an arbitration committee shall be established within ten (10) days thereafter consisting of one (1) representative appointed by the Union and one (1) representative appointed by the Company. The persons so appointed or their designated representatives shall, within ten (10) days after their appointment, select an impartial person as the third arbitrator who shall act as chairman. If agreement is not reached within ten (10) days from the time both representatives were appointed, the party initiating arbitration shall request the Director of the Federal Mediation and Conciliation Service to name a panel of seven (7) arbitrators and the parties in turn shall have the right to strike a name from the panel until only one (1) name remains. The remaining person shall be a member of the arbitration committee and shall act as chairman of the arbitration committee. The right to be the first to strike a name from the panels shall be set by lot.

"(e) Hearings before this arbitration committee shall be commenced within five (5) days of the selection of the chairman if convenient to him; otherwise as soon as possible, and carried to a conclusion as expeditiously as

possible. The committee shall hear and accept pertinent evidence submitted by both parties and shall render a decision in writing to both parties within fifteen (15) days of the completion of the hearing.

"Section 20.2 The decision of a majority of the arbitration committee shall be final and binding on both parties and the Company and the Union agree to abide by such decision.

"Section 20.3 The arbitration committee shall have no authority to change, add to, or subtract from the Contract."

Article 25 of the agreement refers to, and in legal effect, incorporates by reference the Company's plan for employees' pensions, disability benefits and death benefits, which has been in effect for over fifty years, and provides:

"Section 25.1 In the event, during the life of this Contract, the Company desires to make a change in the 'Plan for Employees' Pensions, Disability Benefits and Death Benefits' which would affect the pensions, disability benefits and death benefits of employees within the bargaining unit, it will, before making a change, notify the Union and afford the Union a period of sixty (60) calendar days for bargaining; provided, however, that no change may be made in the Plan which would reduce or diminish the pensions, disability benefits and death benefits provided thereunder, as they may apply to employees within the bargaining unit, without consent of the Union.

"Section 25.2 Any claim that Section 25.1 of this Article has been violated may be presented as a grievance and, if not resolved by the parties under their grievance machinery, may be submitted to arbitration pursuant to the provisions of Article 20, but in such case any decision or action of the Company shall be controlling unless shown to have been discriminatory or in bad faith, and only the question of discrimination or bad faith shall be sub-

ject to the grievance procedure and arbitration. However, nothing in this Contract shall be construed to subject the Plan or its administration to arbitration."

The pension plan is also relevant to this dispute, and provides:

"Section 4. Pensions

"1) a) All male employees who have reached the age of sixty years and whose term of employment has been twenty or more years and all female employees who have reached the age of fifty-five years and whose term of employment has been twenty or more years and all employees who have reached the age of sixty-five years and whose term of employment has been fifteen or more years shall if they so request, or may at the discretion of the Committee, be retired from active service and, upon such retirement, shall be granted service pensions.

"b) Any employee whose term of employment has been thirty years or more, or any male employee who has reached the age of fifty-five and whose term of employment has been twenty-five or more years, or any female employee who has reached the age of fifty years and whose term of employment has been twenty-five or more years may, if the case is approved by the Committee as appropriate for such treatment, be retired from active service and, upon such retirement, shall be granted a service pension."

The Employees' Benefit Committee referred to in Section 4 of the Pension Plan is charged with the administration of the Plan. The Committee is comprised of persons appointed by the Board of Directors of the Company, without restriction. It is clear from the Plan as a whole that Section 4(1) (b) (supra) contemplates the involuntary retirement of an employee. For example, Section 4(10) (Third) of the plan, having reference to the distribution of the trust funds on termination of the Plan, alludes to this class of employees as "all employees who have become eligible, as of the termination date, for retirement on service pen-

sion with the approval of the Committee, *but not at their own request.*" (Emphasis added.)

The facts applicable to the foregoing contractual setting are simple and undisputed. On March 29, 1965, Emil P. Tolotti, an employee covered by the collective bargaining agreement and the Pension Plan, was involuntarily retired under Section 4(1) (b) of the Plan. He had been employed for thirty-six years and was fifty-six years of age. The circumstances leading to this action by the Employees' Benefit Committee are irrelevant to our inquiry. Tollotti deemed himself aggrieved as a dismissed employee. His grievance processed under Article 12 of the agreement was unresolved. The Union, by letter dated April 2, 1965, requested arbitration, stating: " * * * that Company refusal to allow Mr. Tolotti to return to work constitutes a dismissal from service; that the Company action is unfounded, arbitrary and not in good faith; and the Company action to force Mr. Tolotti into early retirement would result in reduced pension benefits and loss of income which is discriminatory, invalid and without the consent of Mr. Tolotti or the Union." The Company replied: "The Company is unwilling to arbitrate the case since the involuntary retirement on pension of Mr. Tolotti raises no arbitrable issue." The issue is plain. The Union says Tolotti was dismissed within the meaning of Article 17 of the Collective Bargaining Agreement and is entitled to arbitration under Section 17.4. The Company responds that Tolotti was involuntarily retired under the Pension Plan and Section 25.2 of the agreement expressly excepts the Plan or its administration from arbitration.

■ While the temptation is strong to construe the agreements for the parties, a task for which lawyers and judges are supposedly especially trained, and to resolve the dispute, judicial discipline precludes this. In the so-called trilogy of labor arbitration opinions (United Steelworkers of America v. American Mfg. Co., 1960, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; United Steelworkers of America v. Warrior & Gulf Navigation Co., 1960, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; United Steelworkers of America v. Enterprise Wheel & Car Corp., 1960, 363 U.S. 593, 80 S.Ct. 371, 4 L.Ed.2d 352), the Supreme Court has defined guidelines to our decision here. In summary, (1) the means chosen by the parties for settlement of their differences under a collective bargaining agreement should be given full play (*American*, 363 U.S., p. 566), 80 S.Ct. 1343; (2) grievances should be arbitrated regardless of whether a Court deems them meritorious (*American*, p. 567, 80 S.Ct. 1343; (3) the function of the Court is limited to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract (*American*, p. 568, 80 S.Ct. 1343); (4) a party may not be required to submit to arbitration a dispute which he has not agreed so to submit, and the meaning of the arbitration clause itself is for the Court unless the parties clearly state to the contrary (*Warrior*, 363 U.S. pp. 582, 583, note 7, 80 S.Ct. 1347; *American*, 363 U.S. p. 572, 80 S.Ct. 1343, Brennan, J., concurring); (5) doubts should be resolved in favor of arbitration and a dispute should not be excluded unless the parties clearly so provided (*Warrior*, 363 U.S. p. 582, 80 S.Ct. 1347; *American*, 363 U.S. p. 572, 80 S.Ct. 1343, Brennan, J., concurring); (6) exceptions to a general arbitration clause are strictly construed and must specifically cover the particular dispute in question (*Warrior*, 363 U.S. p. 584, 80 S.Ct. 1347; *American*, 363 U.S. pp. 572, 573, 80 S.Ct. 1343, Brennan, J., concurring); and (7) a Court should be chary about embarking upon an interpretation of the substantive provisions of a labor agreement under the guise of interpreting the arbitration clause (*Warrior*, 363 U.S. p. 585, 80 S.Ct. 1347).

Our consideration of the application of these guidelines to the present case has led us to the conclusion that arbitration

must be ordered. Article 20 is a broad, general arbitration clause encompassing all unresolved grievances processed under Article 12 "invoking the true intent and meaning of any provision of this Contract * * * except as otherwise provided in this contract." The exception stated in Article 25 relating to the Pension Plan is: "However, nothing in this contract shall be construed to subject the Plan or its administration to arbitration." To deny arbitration, we must conclude that the words "dismissal" and "dismissed" in Article 17 patently do not mean, within the intent of the parties, every involuntary permanent termination of active employment. And with respect to the exclusionary clause, we must find that the pension "Plan" and its "administration" do plainly and unequivocally include a determination by management and its representatives, the Committee, that an employee should be retired and pensioned without his consent; while, on the contrary, the exclusionary clause might be strictly interpreted, in its allusion to the "Plan", to mean only that the substantive provisions to be included in the plan cannot be arbitrated, and in its reference to "administration" that a dispute arising from the performance by the Committee of its functions of determining eligibility, fixing pension benefits, and the like, cannot be arbitrated.

We intend no intimation as to what we believe to be a reasonable and proper interpretation of these agreements. We mean only to suggest that they are subject to varying interpretations of their true intent and meaning and that these are substantive provisions of the labor agreements interrelated with the arbitration clauses. So viewed, this case is substantially on all fours with the *Warrior & Gulf* case, supra. There the general arbitration clause was subject to an exception of matters which were "strictly a function of management" and, applying the guidelines we have attempted to summarize, the Supreme Court held that the management decision to contract out a portion of the work was not so clearly within the exclusionary language as to preclude arbitration.

Perhaps in recognition of this weakness, defendant company has shown by undisputed affidavits in support of its motion that since 1949, some sixty-five employees were involuntarily retired by the Company under Section 4(1)(b) of the Pension Plan, four of whom, including Tolotti, were represented by this plaintiff Union. Presumably this is to demonstrate a practical interpretation of the agreements placed upon them by the parties. Concededly, this is proper grist for the arbitrator's mill, but we do not recognize it as "the most forceful evidence of a purpose to exclude the claim from arbitration" within the intent of the *Warrior* guidelines (363 U.S. 585, 80 S.Ct. 1354) so as to preclude arbitration. There is, for example, no showing that any of the retired employees complained to his union or even that the union knew the facts within time to invoke the grievance and arbitration procedures. In other words, evidence of a practical interpretation by one party to a contract is not useful as an aid to construction unless it is participated in or acquiesced in by the other.

Defendant company relies upon American Stores Company v. Johnston, S.D. N.Y. 1959, 171 F.Supp. 275; United States Steel Corporation v. Nichols (6 CCA 1956), 229 F.2d 396, 56 A.L.R.2d 980, and Bakery & Confectionary W. I. U., Local No. 492 v. National Biscuit Co., (3 CCA 1949), 177 F.2d 684. The second and third cases cited were not actions to enforce arbitration, but constitute examples of court interpretation of agreements under circumstances of involuntary retirement. They should be helpful to the arbitrators in interpreting the agreements here involved. The *American Stores Company* case does present the problem of arbitrability of the employee's claim. It was, however, decided before the arbitration trilogy of cases and is easily distinguishable on the facts.

Defendant's reliance upon Communications Workers of America, AFL-CIO v.

New York Tel. Co. (2 CCA 1964), 327 F.2d 94, and Pacific Northwest Bell Tel. Co. v. Communications Workers of America (9 CCA 1962), 310 F.2d 244 and 337 F.2d 455 (1964), is, in our opinion, also misplaced. The *New York Telephone* case is a prime example of an exclusionary clause which the Court found to be clear, direct, unambiguous and explicit. And as we understand the *Pacific Northwest Bell Telephone* opinions, they support the conclusions we have reached. The Court said (337 F.2d 459):

"[I]f the evidence before the Court of purpose to exclude a particular claim from arbitration is not sufficiently forceful, the result is not, as appellant suggests, that the arbitrator must search for the truth at greater depth. The result, rather, is that the answer has been found and that the underlying dispute is arbitrable."

 The dispute in the instant case relates primarily to the true intent and meaning of the word "dismissed" used in Section 17.4 of the agreement. Plaintiff contends that it means, and was intended to mean, any involuntary termination of active employment and that Tolotti is entitled to arbitration. Defendant, on the other hand, asserts that dismissal and involuntary retirement under the Pension Plan are mutually exclusive. This is not clearly and necessarily so. There is no essential dichotomy between the concept of dismissal and involuntary retirement, inasmuch as dismissal might reasonably be interpreted to encompass involuntary retirement, the answer depending upon the circumstances and the labor relations expertise of the arbitrators. There are no facts before the Court which clearly and convincingly demonstrate what the parties mutually intended "dismissal" to encompass. It therefore is an issue for arbitration. The evidence bearing upon the intent of the parties is undisputed, so summary judgment is proper, and the necessary finding from the undisputed evidence is that the admitted facts and circumstances are not so clear, convincing and unequivocal as to permit the Court to reject arbitration of the true intent and meaning of the agreements.

As a final caveat, we should make it clear that while in the course of this opinion there has necessarily been some discussion of the issues of interpretation which the arbitrators will necessarily resolve, nothing we have said is intended to influence the decision on the merits. Such discussion has been justified to resolve the question of arbitrability.

The parties by their agreement have selected the forum to which the problems of interpretation of the collective bargaining agreement in relation to the Pension Plan is to be submitted. There is no reason to presume that the arbitration board will reach a more untenable resolution of the problems than would a court.

The dispute is ordered referred to a board of arbitration in conformity with Article 20 of the collective bargaining agreement. The arbitrators should first determine whether the true intent and meaning of Article 17 of the agreement is that an involuntary retirement under Article 4, Section 1(b) of the Pension Plan is a dismissal. If the arbitration board concludes that such an involuntary retirement is a dismissal within the meaning of Article 17, it then should proceed to determine whether the decision or action of the Company was made in bad faith (Sec. 17.4). The fact that the Company did cause Tolotti to be awarded a pension under the Pension Plan is one factor to be considered bearing upon the issue of bad faith, if such issue should be reached by the arbitrators.

Within ten (10) days, plaintiff shall submit an appropriate form of summary judgment in conformity with the views herein expressed.