**NICHOLS**

v.

**NATIONAL TUBE CO.**

Civ. No. 27597.

United States District Court,
N. D. Ohio, E. D.

May 13, 1954.

with the Company would be terminated as of May 31, 1946, for the sole reason that he had attained the age of 65 years and because of the Company's policy of compulsory retirement of its employees at that age. He seeks damages upon the claim that he was wrongfully discharged, in violation of his rights under the labor contract in effect at the time and without any cause or reason such as required for discharge or termination of employment by the conditions of the bargaining agreement.

Stripped of its many seeming technical issues, I think the case comes down to the single question of what rights the plaintiff had as an employee of the defendant under the collective bargaining agreement of 1945 in effect at the time of his compulsory retirement as of May 31, 1946.

The defendant sets up numerous grounds for denial of any rights claimed by him and several affirmative contentions why it has no responsibility to the plaintiff.

It is conceded that plaintiff's employment was terminated by the defendant upon the sole ground that he had reached the age of 65 years, and the defendant asserts it had the right to do so despite the labor agreement because it had, some years earlier, adopted and put into uniform practice a policy of retiring all of its employees at the age of 65 years, regardless of their physical fitness to continue with the work they were doing at the time. Although this right or policy was not incorporated or reserved in the labor contract, the defendant relies upon its claimed right of retention of its compulsory retirement policy and, if not, it relies upon the Labor Union representative's knowledge of and acquiescence in the policy and that the plaintiff is charged with knowledge of the policy, or bound by the acquiescence of the Union representatives, because he was a member of the Local and also, as well, that he must have had knowledge of it from what was happening to other employees over the years.

Levin & Levin, Lorain, Ohio, for plaintiff.

James C. Davis, Squire, Sanders & Dempsey, Cleveland, Ohio, for defendant.

JONES, Chief Judge.

The plaintiff Nichols was in the employ of the defendant Company for approximately twenty-seven years,—the last twenty-five years of that time continuously, in its coke plant at Lorain, Ohio. He was a member of the Local Chapter of a National or International Union having a collective bargaining contract with the defendant, executed March 13, 1945, extending to April 22, 1947.

On May 17, 1946, he was called from his work to the Company office and told for the first time that his employment

During the trial the parties entered a stipulation to try the case without a jury.

One ground of defendant's motion for directed verdict or for judgment is that even if plaintiff did not know about the policy, he failed to institute grievance proceedings provided by the contract and therefore having failed to exhaust the contract's procedural and administrative remedies is not entitled to maintain this action.

There are many other matters recited in the answer as defenses, some relating to plaintiff's claim of loss of pension and other benefits by reason of what he terms his wrongful discharge. The plaintiff does not seem to have been one of those qualified for pension. The Company, as such, did not have a pension plan but under certain conditions an employee might become eligible for a small pension under a plan founded by Carnegie and the United States Steel Corporation, but in cases where Social Security exceeded the pension payments no pension was available.

Evidence was received to the effect that the Company at Lorain had entertained many grievance proceedings, initiated by or for other employees who had been retired at the age of 65 years. As it seems to me, such evidence must be limited to the issue of the adoption and enforcement of the compulsory retirement policy. It cannot, consistently with reason, be extended to establish the necessity or requirement of instituting the grievance proceedings provided by the contract since the right of compulsory retirement was not mentioned or reserved in the contract; and the defendant has asserted that it had retained that right despite the absence of anything regarding it in the labor agreement. To me it would seem not only inconsistent with the defendant's position, but completely futile to have instituted grievance proceedings in such circumstances. The retired employee had not the slightest chance of remedial consideration; there was no basis for relief. According to the defendant, the policy of retirement was inflexible and no one in the Company had the right to make exceptions; it was not an arbitral grievance; consequently, it would not be expected that the plaintiff should be required to do a vain thing as a prerequisite to a suit. I do not read the decision in Timken Roller Bearing Co. v. National Labor Relations Board, 6 Cir., 161 F.2d 949, as requiring the use of the grievance procedure in situations or disputes where, as here, the Company had taken the inflexible position that compulsory retirement was not the subject of arbitration.

The contention of defendant that the agreement of March 1, 1950 between the United Steelworkers of America and the defendant constitutes full and complete settlement and disposition of the claim asserted by plaintiff in this action is untenable.

While it may be conceded that the Union as collective agent might enter into an agreement settling for the future the subject of retirement and pensions, Elgin, Joliet & Eastern Ry. Co. v. Burley, 1945, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886, rehearing 1946, 327 U.S. 661, 66 S.Ct. 721, 90 L.Ed. 928; Inland Steel Co. v. National Labor Relations Board, 7 Cir., 1948, 170 F.2d 247, 12 A.L.R.2d 240; Lewellyn v. Fleming, 10 Cir., 1946, 154 F.2d 211, it could not settle and dispose of plaintiff's accrued rights retroactively, unless authorized in some legally sufficient way to act in his behalf. Elgin, Joliet & Eastern Ry. Co. v. Burley, supra; Kordewick v. Brotherhood of Railroad Trainmen, 7 Cir., 1950, 181 F.2d 963.

The evidence does not disclose a legally sufficient agency. There is no evidence that plaintiff gave specific authorization to the Union to act in his behalf. Indeed, at the time the Union purported to settle his claim he was no longer an active member. It is fair to say that the Union to some extent was bartering away claims of former members in an attempt to secure present benefits for active members. Even though in so doing the Union was properly represent-

ing its membership, the conflict of interest dispels a true agency so far as the plaintiff is concerned. Edwards v. Capital Airlines, 1949, 84 U.S.App.D.C. 346, 176 F.2d 755.

Nor is the insertion of Article XVII in the constitution of the United Steelworkers of America on May 18, 1946, a sufficient authorization in this instance. It would be ignoring realities to hold that the plaintiff—who already had been notified of his retirement on May 17, 1946, and whose employment was finally terminated on May 31, 1946— impliedly accepted Union authority created by an amendment to its constitution and not to be exercised until years later when he was no longer an active member. Substantial rights can not be disposed of by such technical niceties.

It does not seem to me that the decision of the Supreme Court in the Burley case, supra, is sufficient authority to sustain the Resolution of the Union Convention so as to wipe out the accrued rights of employees by subsequent action. It is fundamental that such action may not have retroactive effect to impair or destroy accrued or pre-existing rights. The fact that the National Union adopted such Resolution as the one of May, 1946, is strong support for the plaintiff's position that the Union had no such power or authority over the plaintiff's accrued rights under the 1945 contract. I cannot interpret the decision in the Burley case as suggesting or proposing retroactive impairment or curtailment of a Union member's pre-existing contract rights by subsequent constitutional Resolution depriving members of their accrued rights, nor can I find sound reason for finding that the 1946 proceedings of the National Union should be applied to rights long since arising and belonging to the plaintiff.

It is well understood that the Union constituted the bargaining agent of the Union members and as such negotiated the contract which became binding on the members, but I am not prepared to hold that the Union as agent may be permitted to barter away the Union member's rights acquired under the contract by tacitly acquiescing in a Company policy of which the Union member had neither notice nor knowledge.

Thus the disposition of the twenty-six or more grievances, based upon compulsory retirement, held in abeyance in what has been called "step four" of grievance procedure and later, on March 1, 1950, made the subject of a settlement agreement between the Company and the Union could not destroy rights secured to the plaintiff by the 1945 contract. In the later agreement, while settling the claims, the Company adroitly, but, as I think inconsistently, reasserted its position that grievances based upon compulsory retirement were not the subject of arbitration.

I hold that the agreement of March 1, 1950 is not a bar to the assertion by plaintiff of his present claim.

I had supposed, until now, that a bargaining agreement expressed the complete obligations and rights of the parties relating to employees, including conditions and tenure of employment, and conditions respecting means for termination of employment; but here it is pressed upon me that any method of terminating employment, such as compulsory retirement, not expressed in the agreement is retained by, or reserved to the Company, and this without notice to or knowledge of the employee, who is, on the contrary, charged with implied knowledge of the reservation. This is, as Professor Lehosky testified, the theory of collective bargaining and the interpretation adopted in arbitration of labor disputes. The defendant's claim that this was the interpretation accepted and acquiesced in by Union leaders and responsible Union representatives again seems to me to be inconsistent with the testimony and evidence of Mr. Hobby in the examples submitted of grievance procedures based upon compulsory retirement. In such cases, the Union representatives uniformly supported the employee's claims to relief.

The nearest authoritative judicial approach to this question may be found in Timken Roller Bearing Co. v. National

Labor Relations Board, supra, where Judge Simons, speaking for the court, stated that the matter of sub-contracting was viewed by the Company as of no concern to the Union because the Company had regarded sub-contracting as its exclusive prerogative. He found, from the record, without controversy, that the Company and the Union construed the management clause as including sub-contracting as a management function. But, unlike the Timken case, the defendant here did not contend that compulsory retirement was a management prerogative, reserved under the management clause of the contract. Here the matter of employment conditions, tenure and termination were the chief objects of agreement and the subjects of prime interest and importance to the Union and to the employees. The defendant took the position that the question of compulsory retirement could not be the basis of an arbitral grievance and that any dispute about it was not subject to arbitration.

What should a collectively bargained labor contract cover, unless the complete agreement upon conditions, tenure, and termination of employment? What other object and purpose can there be for such an agreement? If some undisclosed rights in respect of employment are not included or, without notice to the employees, are withheld on the theory that they are not the subject of bargaining, how can the contract be said to express the full coverage of employment rights?

A current decision by the Eighth Circuit Court of Appeals, National Labor Relations Board v. Nash-Finch Co., 211 F.2d 622, has been brought to my attention, wherein the court held against the National Labor Relations Board's attempt to hold the company to certain standards of wages and working conditions not provided in the bargaining agreement; and this on the theory, as defendant here claims, that matters not expressed in the agreement are retained by the employer.

But in our case, tenure and termination of employment were among the most important objects, purposes and provisions of the bargaining agreement. If management desired and intended to retain a compulsory retirement practice, it should have reserved that method of termination of employment in the contract, or notified its employees of its purpose and intention in respect of such policy.

What well might be called an industrial revolution brought about the collective bargaining procedure,—industry and the workers were to meet upon a contractual basis of rights and obligations; each controlled and restrained within the terms of the bargain. It is not to be supposed that the employees were to retain some undisclosed rights which they could thereafter continue to assert without consent or consideration of the employer. No more do I think may the employer withhold an employment right not recorded or reserved by the agreement. These contracts are somewhat of the nature of the Book of the Common Law of ancient days upon which employers and the artisans pledged their mutual understanding and future conduct toward each other's rights.

If that defense should be sustained, the matter of notice of or acquiescence in a practiced policy of compulsory retirement is of no consequence.

If the foregoing is the right answer I think all the proffered evidence of the defendant as to prior and subsequent successive labor contracts containing no restriction upon or mention of the alleged compulsory retirement policy of the Company, and the proffered evidence tending to show the understanding, knowledge and acquiescence of Union leaders or representatives in the retention or reservation of the retirement policy of the Company have limited relevancy; if, indeed, such evidence is relevant at all it must be related to two things which I think would have to be established to make such defense effective: (1) that the knowledge of the Company's retirement policy was brought to the attention of the plaintiff,—through the Company officials or

its responsible employees, or through the responsible representatives of the Union Local; (2) that having such knowledge, plaintiff be said to have acquiesced in such policy by continuing as a member of the Union with knowledge that there was nothing in the labor contract protecting him against the right of the Company to enforce its retirement policy.

While there is evidence that the defendant had a somewhat flexible retirement policy from 1931 to 1941, the policy of compulsory retirement at 65 was adopted in 1941. However, it appears to have been suspended, or modified, during the war emergency. Thus, it will be seen that for four or more years of the existence of the alleged inflexible compulsory retirement policy the evidence is that the Company had modified the policy to the extent of rehiring, stripped of rights, employees who had been shortly theretofore retired at 65. If plaintiff was supposed to have had some knowledge or implied understanding of a fixed retirement policy he could not, as it seems to me, be expected to understand that the Company had only temporarily, for the duration of the war emergency, departed from its compulsory retirement policy.

■ There is no evidence that any responsible or authoritative representative of the Company or of the Union ever notified the plaintiff of such policy before the abrupt termination of his employment and notice on May 17, 1946.

Nor is there any evidence sufficient, or of probative effect, to charge the plaintiff with knowledge of the existence of the policy, or any evidence to support an understanding of and acquiescence in any such policy.

■ The plaintiff, as a member of the Union, was bound by the terms and provisions of the bargaining agreement, but surely he could not, in law and justice, be bound by the interpretations and tacit understanding or acquiescence of Union leaders or representatives which were not brought to his knowledge or understanding.

Negotiations by the Company and the Union leading up to the bargaining agreement and the execution of a subsequent contract making some provision for pensions or retirement income cannot, as it seems to me, affect or determine rights belonging to the plaintiff under the 1945 contract.

I cannot construe the existence and practice of a compulsory retirement policy as placing the burden of finding out about the practice upon the employee, nor can I subscribe to the theory that absence of a compulsory retirement provision from the contract leaves the arbitrary power in the Company to enforce retirement without notice or knowledge upon the part of the employee who is a party to the contract and without regard to the rights belonging to him under the provisions of the contract.

Although MacDonald, a high Union official, in his deposition was somewhat evasive on cross-examination, his statement of the Union's position that the contract did not justify the retention by the Company of a right to compulsory retirement, corroborates the position taken by plaintiff's witness Schremp who had worked for the defendant twenty-eight years and also was a member of the Union Grievance Committee during the years involved in this proceeding, and, as I think, more likely reflects the real position of the Union than that testified to in deposition by defense witness Stevens in his notes as to what Philip Murray told him; and Murray's statement in the 1946 Convention came after the event and could not, in my view, be controlling as to the plaintiff's rights,—by this I mean the plaintiff's rights under the 1945 contract and not his right to bring suit.

To be realistic and practical in determining the rights of the plaintiff it seems to me that the defendant, to insure the preservation of its policy, had one, or possibly two responsibilities: (1) expressly, through responsible authority

to advise the plaintiff at the inception of such policy and of its adoption, or (2) to have made such a reservation in the bargaining agreement, in which event the plaintiff would have had doubtful rights of redress. Legal reason and justice seem to me to require that in the absence of effective affirmative evidence of knowledge of the existence of the retirement policy and express or implied understanding that the labor agreement did not protect him against the compulsory policy, the plaintiff had a right to rely upon the termination of his employment being dependent upon the express provisions of the labor agreement. I think it not enough that the labor leaders or representatives knew and acquiesced. The plaintiff could not be bound by some implied understanding or acquiescence not brought home to him by responsible authority.

■ As it seems to me, bargaining agreements, to be binding upon Company and employees, should expressly define their respective obligations as well as the limits on or extent of the employee's rights.

I think there is no question that the word "discharge" has a different meaning than "compulsory retirement" and I do not hold that the plaintiff was discharged in the usual and ordinary sense of that term. But his employment was effectively and forcibly terminated without any cause expressed or contemplated by the labor agreement, and in breach of his rights.

The legal and practical effect of compulsory retirement is the same as a discharge and therefore, as it seems to me, there was no contractual ground upon which to base the forcible termination of the plaintiff's contract. The plaintiff cannot thus be deprived of his right to rely upon the contract as providing the only means by which his employment could be terminated. Inland Steel Co. v. National Labor Relations Board, supra; United Protective Workers of America v. Ford Motor Co., 7 Cir., 194 F.2d 997; International Association of Machinists v. General Electric, 24 L.R.

R.M. 2527 (Cuyahoga County Common Pleas).

What has been said before respecting the creation of an agency in the Union, disposes of defendant's contentions that the action is maintainable only by the collective bargaining agent and that the collective bargaining agent is a necessary party to this action. This is not a matter affecting the collective interest, in which the collective agent would have an interest.

Consideration for the agreement of the Company is found in the forebearance of all workers in agreeing not to exercise certain rights. With respect to the plaintiff as an individual, the contract is unilateral. The Company agreed that its offer of employment could be withdrawn only in the circumstances stated in the collective bargaining agreement.

■ At the time of the termination of plaintiff's employment he was 65 years of age and, according to the evidence, in good health and able to do the work required of his job, with a life expectancy of eleven-plus years; he now is 73 years of age, claims still to be in good health and able to do the work required of the same job, with a present life expectancy of approximately seven years. The only employment he has been able to secure for the most part has been janitor work but he has not been able to secure anything as substantially gainful as the work he was doing upon his retirement. The only evidence upon the subject of damages is found in the stipulation of what amounts he has been able to earn since his retirement, and the earnings of the employee who took over his job. Unless we accept this as the reasonably certain measure of his damage it is difficult to know by what other means to determine the question. One will have to assume that under normal conditions he would have continued to work under the subsequent like contracts and on the same job that his successor obtained and held over that period, and probably entitled to recover for loss of pension rights under the 1950 contract,

although somewhat speculative. On the whole, I think damages reasonably certain to have been sustained, fairly and justly appraised at present value, would be $25,000, including loss of earnings and pension rights.

Enough has been said in this memorandum to make it adequate compliance with and sufficient as to findings and conclusions under Rule 52(a), Fed.Rules Civ.Proc. 28 U.S.C.A.

In view of the decision reached, the motion of the defendant, at the conclusion of the evidence, to dismiss and for judgment, will be denied.