Adam MAREC a.k.a. Adam Merec  et al.,
Plaintiffs,

v.

UNITED STATES STEEL CORPORA-
TION, Substituted Defendant.

No. 27706.

United States District Court
N. D. Ohio, E. D.

June 16, 1961.

**138**

Levin & Levin, Lorain, Ohio, for plaintiffs.

James C. Davis and Laurence E. Oliphant, Jr., of Squire, Sanders & Dempsey, Cleveland, Ohio, for defendant.

KALBFLEISCH, District Judge.

The amended Caption of Second Amended Complaint, filed February 28, 1961, correctly identifies the parties as of the time of trial. The complaint was originally filed on September 21, 1950, and the second amended complaint contains twenty-eight causes of action for twenty-eight separate individuals, formerly employees of the National Tube Company. With the passing of time some of the plaintiffs have died, others have become incapacitated, and the original defendant was merged with the United States Steel Corporation. The plaintiffs brought this action to recover damages from the defendant, alleging each was wrongfully discharged in violation of a collective bargaining agreement of March 13, 1945, between the National Tube Company and the United Steelworkers of America—CIO, of which union all of the plaintiffs were members.

### First Cause of Action

Plaintiff, Adam Marec, a. k. a. Adam Merec, allegedly was first employed by the Company in 1916, and thereafter admittedly was continuously employed from November 1, 1917, to December 31, 1946.

### Second Cause of Action

Plaintiff Louis Almasi allegedly was first employed by the Company in 1932, and admittedly was continuously employed from August 25, 1930, to February 6, 1947.

### Third Cause of Action

Plaintiff Abram B. Cashner allegedly was first employed by the Company in 1899, and thereafter admittedly was continuously employed from April 21, 1924, to May 31, 1946.

### Fourth Cause of Action

Plaintiff Peter Karesic, a. k. a. Peter Karacic, allegedly was first employed by the Company in 1909, and thereafter admittedly was · continuously employed from October 29, 1912, to August 19, 1945—except that plaintiff was retired June 30, 1944, and rehired July 2, 1944.

### Fifth Cause of Action

Plaintiff Charles S. Kiser allegedly was first employed by the Company in 1917, and thereafter admittedly was continuously employed from September 15, 1920, to August 22, 1945—except that plaintiff was retired February 28, 1945, and rehired March 1, 1945.

### Sixth Cause of Action

Plaintiff George J. Kiser admittedly was continuously employed from January 1, 1903, to October 31, 1946.

### Seventh Cause of Action

Plaintiff Frank Kryc allegedly was first employed by the Company in 1907, and thereafter admittedly was continuously employed from February 2, 1922, to June 3, 1946.

### Eighth Cause of Action

Plaintiff Joseph Long admittedly was continuously employed by the Company from December 20, 1927, to August 18, 1945—except that plaintiff was retired January 31, 1944, and rehired February 1, 1944.

### Ninth Cause of Action

Plaintiff George Mark allegedly was first employed by the Company in 1903, and thereafter admittedly was continuously employed from November 21, 1923, to April 30, 1946.

### Tenth Cause of Action

Plaintiff Ai Mayberry admittedly was continuously employed by the Company from June 3, 1924, to August 22, 1945—except that plaintiff was retired March 31, 1943, and rehired April 8, 1943.

### Eleventh Cause of Action

Plaintiff Corwin McIntyre admittedly was continuously employed by the Company from December 17, 1917, to March 31, 1947.

### Twelfth Cause of Action

Plaintiff Stjepan Milicic allegedly was first employed by the Company on May 31, 1906, and thereafter admittedly was continuously employed from October 30, 1911, to August 21, 1945—except that plaintiff was retired December 31, 1944, and rehired January 1, 1945.

### Thirteenth Cause of Action

Plaintiff John Nemeth allegedly was first employed by the Company in 1906, and thereafter admittedly was continuously employed from January 12, 1926, to August 31, 1946.

### Fourteenth Cause of Action

Plaintiff Ernst Nickel admittedly was continuously employed by the Company from March 12, 1925, to August 20, 1945—except that plaintiff was retired April 30, 1945, and rehired May 1, 1945.

### Fifteenth Cause of Action

Plaintiff Frank Nowicki allegedly was first employed by the Company in 1900, and thereafter admittedly was continuously employed from May 24, 1920, to August 18, 1945—except that plaintiff was retired October 30, 1943, and rehired November 8, 1943.

### Sixteenth Cause of Action

Plaintiff Frank Roig admittedly was continuously employed by the Company from May 22, 1918, to August 18, 1945—except that plaintiff was retired February 28, 1943, and rehired March 8, 1943.

### Seventeenth Cause of Action

Plaintiff John Rosso admittedly was continuously employed by the Company from September 4, 1909, to August 18, 1945—except that plaintiff was retired July 31, 1944, and rehired August 1, 1944.

### Eighteenth Cause of Action

Plaintiff Dominic Sylvester, a. k. a. Domenico Silvestro, admittedly was continuously employed by the Company from June 28, 1920, to February 28, 1947.

### Nineteenth Cause of Action

Plaintiff Louis Takacs admittedly was continuously employed by the Company from March 26, 1924, to February 28, 1947.

### Twentieth Cause of Action

Plaintiff Carl G. Thumm admittedly was continuously employed by the Company from January 31, 1924, to July 31, 1946.

### Twenty-First Cause of Action

Plaintiff George Vignovich admittedly was continuously employed by the Company from June 1, 1909, to August 18, 1945—except that plaintiff was retired July 31, 1944, and rehired August 1, 1944.

### Twenty-Second Cause of Action

Plaintiff William H. Ward admittedly was continuously employed by the Company from September 25, 1917, to August 21, 1945—except that plaintiff was retired May 31, 1945, and rehired June 1, 1945.

### Twenty-Third Cause of Action

Plaintiff Charles Davis admittedly was continuously employed by the Company from August 1, 1918, to August 17, 1945—except that plaintiff was retired June 30, 1944, and rehired July 3, 1944.

### Twenty-Fourth Cause of Action

Plaintiff George McCaffery admittedly was continuously employed by the Company from June 24, 1924, to August 18, 1945—except that plaintiff was retired June 30, 1945, and rehired July 2, 1945.

### Twenty-Fifth Cause of Action

Plaintiff Earn A. Smith allegedly was first employed by the Company in 1906, and thereafter admittedly was continuously employed from September 2, 1908, to August 18, 1945—except that plaintiff was retired March 31, 1945, and rehired April 2, 1945.

### Twenty-Sixth Cause of Action

Plaintiff Oliver Testin admittedly was continuously employed by the Company from March 28, 1924, to August 24, 1945—except that plaintiff was retired October 31, 1944, and rehired November 1, 1944.

### Twenty-Seventh Cause of Action

Plaintiff Paul Thamushewski, a. k. a. Paul Tomaszewski, allegedy was first employed by the Company on July 15, 1919, and thereafter admittedly was continuously employed from March 25, 1926, to August 14, 1945—except that plaintiff was retired June 30, 1945, and rehired July 2, 1945.

### Twenty-Eighth Cause of Action

Plaintiff Peter Trnyan allegedly was first employed by the Company in 1913, and thereafter admittedly was continuously employed from July 14, 1915, to October 7, 1946.

The foregoing statements of the twenty-eight causes of action contain merely the identification of the plaintiff in each cause of action and the duration of his employment. This method of setting forth each cause of action is sufficient for all purposes, for the reason that the allegations in all of the causes of action are identical except as to the dates of employment.

The plaintiffs charge in their second amended complaint, and the defendant admits, that:

"1. Plaintiff is a citizen and resident of the State of Ohio. Defendant is a corporation organized and existing under the laws of the State of New Jersey. Defendant maintains an office and steel plant in the City of Lorain, County of Lorain and State of Ohio in the Eastern Division of the Northern District of said state, wherein the defendant employs in its Production Department about 11,500 men. The matter in controversy exceeds, exclusive of interest and costs, the sum of $3,000.00.

"2. United Steelworkers of America, also known as United Steelworkers of America, C.I.O., is a labor union and is and has been, since July 30, 1942, by virtue of certification by the National Labor Relations Board, the duly certified collective bargaining agent for all employees of the defendant at its said plant in the City of Lorain, Ohio, except salaried employees, foremen, assistant foremen, supervisors in charge of any classes of labor, watchmen, guards and confidential clerical employees. Since July 30, 1942, until the present time the United Steelworkers of America has continuously acted as such bargaining agent.

"3. Plaintiff throughout the period of his employment by the defendant, after July 30, 1942, was one of the employees of the defendant at its plant in Lorain, Ohio, for

whom the United Steelworkers of America was certified and acting as such bargaining agent.

"4. On March 13, 1945, United Steelworkers of America and the defendant entered into a collective bargaining contract covering certain of the terms and conditions of plaintiff's employment by the defendant, which contract was in full force and effect from March 13, 1945 until April 22, 1947. Plaintiff was one of the employees represented by United Steelworkers of America in the negotiation and execution of said contract dated March 13, 1945, and the terms and conditions of employment prescribed in the said contract governed and controlled plaintiff's employment by the defendant * *."

"5. The collective bargaining contract so entered into on March 13, 1945 between United Steelworkers of America and the defendant, did provide in part as follows:

" 'Section 1. Purpose and Scope

" 'B. Bargaining Unit

" 'The term "employee", as used in this Agreement, applies to all employees of the Company employed in and about the Company's steel-manufacturing and by-product coke plants, excluding salaried employees, foremen, assistant foremen, supervisors in charge of any classes of labor, watchmen, guards, and confidential clerical employees regardless of method of compensation (but not excluding other clerical employees on an hourly wage-rate basis), for whom the Union is, or may be during the life of this agreement, certified by the National Labor Relations Board as the exclusive collective bargaining representative.

" 'Section 2. Recognition

" 'The Company recognizes the Union as the exclusive collective bargaining representative for all the employees of the Company as defined in Section 1. * * *

" 'Section 8. Seniority

" 'The parties recognize that promotional opportunity and job security in event of promotions, decrease of forces and rehiring after layoffs should increase in proportion to length of continuous service, and that in the administration of this Section the intent will be that whereever practicable, full consideration shall be given continuous service in such cases. * * *

" ' * * * 2. Increase or decrease in forces—the following facts as listed below shall be considered; however, only where both factors "a" and "b" are relatively equal shall continuous service be the determining factor:

" 'a. Ability to perform the work;

" 'b. Physical fitness;

" 'c. Continuous service. * *

" ' * * * There shall be no deduction of any time lost which does not constitute a break in continuity of service. Continuous service is broken by:

" 'a. Voluntarily quitting the service;

" 'b. Absence due to discharge, termination, suspension or leave of absence, any of which continues for more than six (6) months; or

" 'c. Absence due either to layoff or to disability or both which continues for more than two years; provided, however, that employees injured while on duty shall accumulate credit for continuous service until the termination of the period for which statutory compensation is payable. * * *

" 'Section 10. Management

" 'The management of the works and the direction of the working forces, including the right to hire, suspend or discharge for proper cause, or transfer, and the right to relieve employees from duty because of lack of work or for other legiti-

mate reasons, is vested exclusively in the Company, provided that this will not be used for purposes of discrimination against any member of the Union.

" 'Section 11. Suspension and Discharge

" 'In the exercise of its rights as set forth in Section 10, Management agrees that an employee shall not be peremptorily discharged from and after the date hereof, but that in all instances in which Management may conclude that an employee's conduct may justify suspension or discharge, he shall be first suspended. * * ' "

Following the above charges by the plaintiffs which were admitted by the defendant, the plaintiffs in each cause of action asserted the time when their employment with the defendant began and was terminated. The defendant, in its answer to each of the causes of action, stated specifically the dates of employment of each plaintiff and, where applicable, the dates of retirement and rehiring and the date of final termination subsequent to the rehiring. To ascertain these dates as they apply to each plaintiff you are referred to the statements as to each cause of action as set forth above.

Thereafter, in the second amended complaint, each plaintiff charges that under the terms of the collective bargaining contract of March 13, 1945, plaintiff could be discharged only for proper cause or legitimate reason and then only after he had been first suspended, and this charge by each plaintiff is admitted by the defendant.

Each plaintiff then charges that, contrary to the terms and provisions of said contract of March 13, 1945, the defendant did peremptorily and without first suspending the plaintiff, and without proper cause or legitimate reason therefor, discharge the plaintiff. To this charge the defendant answered, specifically denying that each plaintiff was discharged as alleged or that defendant had violated the collective bargaining contract. Each plaintiff charges that he was discharged by defendant for the alleged reason that plaintiff had attained the age of sixty-five years, and allegedly for no other reason. Plaintiffs further charge that attaining the age of sixty-five is neither a proper cause nor legitimate reason for discharge under the collective bargaining contract; and that, as plaintiffs at the time of their discharge were physically fit and able to perform their work, said discharge was wrongful and constituted a breach in violation of the collective bargaining contract of March 13, 1945. Such charges by each of the plaintiffs are specifically denied by the defendant.

Without burdening this opinion with a detailed recital of the numerous defenses asserted by the defendant, which vary in number according to the plaintiff, I will summarize the defenses by stating that the defendant admits each plaintiff's employment was terminated on the date hereinbefore stated. The defendant claims that the plaintiffs were not discharged, but were retired on the termination date set forth in their respective causes of action, in accord with a plan of compulsory retirement of its employees which it had put into effect many years before the execution of the collective bargaining contract of March 13, 1945, and which it had openly enforced on a uniform and non-discriminatory basis both before and after March 13, 1945, with the knowledge of the union, and that by reason of such compulsory retirement plan the defendant retained the right compulsorily to retire each plaintiff upon his attainment of an age specified by the defendant. The defendant claims that each plaintiff was notified by the defendant that he would be retired effective at the end of the month in which he attained the age of sixty-five and that under the terms of the grievance and arbitration clause in the collective bargaining agreement of March 13, 1945, as well as the terms of a subsequent collective bargaining agreement of April 22, 1947, the alleged claim of each plaintiff that he was discharged without proper cause in

violation of the collective bargaining agreement of March 13, 1945, was subject to said grievance and arbitration procedure, and that said procedure constituted the sole and exclusive remedy, form and procedure for its presentation, prosecution, consideration, appeal and determination. The defendant asserts that the plaintiffs are barred from bringing this action because the collective bargaining contract provided a detailed administrative remedy, by way of a grievance and compulsory arbitration procedure, which none of the plaintiffs exhausted and which constituted a condition precedent to each plaintiff's right to invoke the jurisdiction of this Court. The defendant claims that a collective bargaining agreement between the United Steelworkers of America and the defendant was executed on March 1, 1950, which fully settled, released, discharged and disposed of the claim of each plaintiff.

In the Fourth, Fifth, Eighth, Tenth, Twelfth, Fourteenth, Fifteenth, Sixteenth, Seventeenth, Twenty-first, Twenty-second, Twenty-third, Twenty-fourth, Twenty-fifth, Twenty-sixth and Twenty-seventh Causes of Action the defendant asserts as an additional defense that the plaintiffs, on the dates set forth in their respective causes of action, were retired and rehired and that such retiring and rehiring was consented to by each plaintiff; further, that each plaintiff voluntarily accepted temporary re-employment and thereby waived any claim that his retirement was wrongful and that the plaintiff is thereby estopped and barred from rescinding or seeking to withdraw his consent and agreement to retire and from claiming or obtaining any recovery or relief in this action.

In the Fourth, Sixth, Eleventh, Twelfth, Sixteenth, Seventeenth, Twenty-first, Twenty-second, Twenty-third and Twenty-fifth Causes of Action the defendant asserts the further defense that the plaintiffs in those causes of action, subsequent to their retirement under the compulsory retirement plan or policy, became eligible, sought, were paid and accepted a pension from the United States Steel and Carnegie pension fund. Defendant further asserts that said plaintiffs, by applying for and accepting a pension, in accordance with the rules and regulations of said fund, thereby recognized and admitted their retired status and thus waived any claim that their retirement was wrongful, and that plaintiffs are now estopped and barred from rescinding or seeking to withdraw their consent and agreement to retire and from claiming or obtaining any recovery or relief in this action.

Counsel for the plaintiffs and the defendant herein are counsel for plaintiffs and defendant in the following companion cases:

Nichols v. National Tube Co., Civil Case No. 27597, 122 F.Supp. 726. Removed from State Court to this Court on August 3, 1950.

Dane Vukas, et al. (24 plaintiffs) v. United States Steel Corporation (substituted for National Tube Company), Civil Case No. 27705. Filed September 21, 1950.

Joseph Krusow v. United States Steel Corporation (substituted for National Tube Company), Civil Case No. 27746. Filed October 4, 1950.

Frank Szenyes, a. k. a. Frank Molnar, v. United States Steel Corporation (substituted for National Tube Company), Civil Case No. 27747. Filed October 4, 1950.

Domenico De Leonardis, et al. (11 plaintiffs) v. United States Steel Corporation (substituted for National Tube Company), Civil Case No. 27892. Filed December 11, 1950.

Thus we observe that, including the plaintiffs in the instant case and those in the above set forth companion cases, sixty-six former employees of the National Tube Company, which corporation has been merged with the United States Steel Corporation, have asserted claims for damages resulting from an alleged breach by the defendant of a collective bargaining agreement. Although six separate

actions have been filed, the allegations and therefore the issues are the same.

On April 15, 1954, Case No. 27597 came on for trial before the Honorable Paul Jones. A jury was impanelled and trial to the jury continued through April 16, 1954. On April 19, 1954, the jury was waived and the case was thereafter tried to the Court. A memorandum adopted as findings of fact and conclusions of law, awarding judgment to the plaintiff, was filed on May 13, 1954. This memorandum is reported in 122 F.Supp. 726. An appeal was prosecuted to the United States Court of Appeals for the Sixth Circuit where the judgment of the District Court was reversed. The decision of the Court of Appeals is reported in United States Steel Corp. v. Nichols, 6 Cir., 1956, 229 F.2d 396, 56 A.L.R.2d 980, certiorari denied 351 U.S. 950, 76 S.Ct. 846, 100 L.Ed. 1474. The proceedings in the companion cases listed above were stayed pending the decisions of the reviewing Courts.

Extensive pretrial and discovery proceedings in the instant case followed the decision on the appeal of the Nichols case. In response to motions of the plaintiffs, this Court, in June of 1960, devoted a week to hearing and considering matters preliminary to a trial, which hearing resulted in a continuance of the trial on the merits.

At the trial on the merits it was agreed and stipulated that exhibits and testimony in the Nichols case, supra, might be admitted where material and relevant. The collective bargaining agreements of March 13, 1945, April 22, 1947, and March 1, 1950, between the United Steelworkers of America and the defendant, plus stipulations, exhibits and testimony in the Nichols case, were offered and admitted and, in addition thereto, hundreds of exhibits (documents from the files and records of the defendant), as also testimony of witnesses other than those who appeared in the Nichols case, were submitted at the trial which required six weeks.

One of the questions to be considered and determined is: Did the collective bargaining agreement of March 13, 1945, permit the defendant to terminate employment of its employees under a so-called compulsory retirement policy when the employees became sixty-five years of age, provided the compulsory retirement policy was bona fide, uniform and non-discriminatory and was not actually a discharge under the guise of retirement and was not, in substance, merely a subterfuge to avoid its contractual obligation against discharge?

It is the plaintiff's contention that the collective bargaining agreement of March 13, 1945, prohibits termination of employment for the reason of age and that the evidence proves that the agreement is to be interpreted as prohibiting termination of employment for the reason of age; and that if the agreement allows the enforcement of a bona fide retirement policy, the evidence does not prove defendant had in existence a bona fide retirement policy, or that defendant enforced such policy uniformly and without discrimination. It is the further contention of plaintiffs that the defendant should be estopped from maintaining its defense that plaintiffs did not exhaust the remedy of grievance procedure provided by the agreement and that the plaintiffs had the right to elect the remedy of this lawsuit or the remedy of the grievance procedure. In support of these contentions the plaintiffs offer the following authorities: Bufkin v. Mitchell, 106 Miss. 253, 63 So. 458, 50 L.R.A.,N.S., 428; Elk Hotel Co. v. United Fuel Gas Co., 75 W.Va. 200, 83 S.E. 992, L.R.A. 1917E, 970; Condol v. Baltimore & O. R. Co., 1952, 91 U.S.App.D.C. 255, 199 F. 2d 400; Hartford Protection Ins. Co. v. Harmer, 2 Ohio St. 452; International Ass'n of Machinists v. Electric Vacuum Cleaner Div., G. E. Co., Ohio Com.Pl., 136 N.E.2d 167; J. I. Case Co. v. N. L. R. B., 321 U.S. 332, 64 S.Ct. 576, 88 L. Ed. 762; Lang v. Commonwealth, 190 Ky. 29, 226 S.W. 379; Lindenburg v. American Railway Express Co., 88 W.Va. 439, 106 S.E. 884, 886; Los Angeles County v. Ransohoff, 24 Cal.App.2d 238, 74 P.2d 828; Morton Salt Co. v. Federal Trade

Comm., 7 Cir., 1947, 162 F.2d 949; Nichols v. National Tube Co., D.C.N.D. Ohio 1954, 122 F.Supp. 726, 732; Ohio & Mississippi Ry. Co. v. McCarthy, 96 U.S. 258, 24 L.Ed. 693; Order of R. R. Telegraphers v. Railway Express Agency, 321 U.S. 342, 64 S.Ct. 582, 88 L.Ed. 788; People v. Vickroy, 266 Ill. 384, 107 N.E. 638; Rolax v. Atlantic Coast Line R. Co., 4 Cir., 1951, 186 F.2d 473; The Seeandbee, 6 Cir., 1939, 102 F.2d 577; Senior v. Ratterman, 44 Ohio St. 661, 11 N.E. 321; Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795; State v. Pate, 47 N.M. 182, 138 P. 2d 1006; State Board of Assessors v. New Jersey Cent. R. Co., 48 N.J.L. 146, 4 A. 578; Attorney General v. Winnebago Lake & Fox River Plank Road Co., 11 Wis. 35; The Albatross v. Wayne, 16 Ohio 513; United Protective Workers of America v. Ford Motor Co., 7 Cir., 1952, 194 F.2d 997; United Protective Workers of America, Local No. 2 v. Ford Motor Co., 7 Cir., 1955, 223 F.2d 49, 48 A.L.R.2d 1285; United States Steel Corp. v. Nichols, 6 Cir., 1956, 229 F.2d 396, 56 A.L.R.2d 980; West Texas Utilities Co. v. N. L. R. B., 1953, 206 F.2d 442, certiorari denied 346 U.S. 855; United Steelworkers of America v. Warrior & Gulf Navigation Co., 361 U.S. 912; Whitt v. Industrial Commission, Ohio App. 1958, 162 N.E.2d 213; Yazujian v. J. Rich Steers, Inc., 195 Misc. 694, 89 N.Y.S.2d 551; Texts, 11 O.Jur.2d 503.

The defendant takes a contrary view and urges that the law of this case is established by the decision in United States Steel Corp. v. Nichols, 6 Cir., 1956, 229 F.2d 396, 56 A.L.R.2d 980, certiorari denied 351 U.S. 950, 76 S.Ct. 846, 100 L.Ed. 1474. To this contention by the defendant the plaintiffs have replied that the Nichols decision is no longer controlling in the light of later decisions of the Supreme Court of the United States. These later decisions are: United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 1363, 4 L.Ed.2d 1403, 1432; United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct.

1347, 4 L.Ed.2d 1409; and United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424.

Before addressing myself to findings of fact regarding the alleged bona fide, uniform and non-discriminatory compulsory retirement policy, I shall resolve the question of law presented, the question being: Since the defendant did not specifically retain in the agreement of March 13, 1945, the right to keep in effect its policy of compulsory retirement for age, is the defendant prohibited from enforcing such a compulsory retirement policy and asserting it as a defense in this case?

In the Nichols case, supra, the District Court, 122 F.Supp. 726, was of the opinion that the bargaining agreement expressed the complete obligations and rights of the parties relating to employees, including conditions and tenure of employment and conditions respecting means for termination of employment, and that the employer should not be permitted to withhold an undisclosed employment right not recorded or reserved by the agreement. The Court of Appeals disagreed with the District Judge's conclusion and held that, from the evidence in the Nichols case and the law applicable thereto, the collective bargaining agreement of March 13, 1945, covers only such matters as the parties may have been able to agree upon and leaves unresolved such issues as the parties may not have been able to agree upon and with respect to which the law does not require a concession by either party. The Court of Appeals was careful to point out that the evidence in the Nichols case proved that compulsory retirement was one of the issues between the defendant and the union upon which no agreement could be reached. The evidence in the instant case clearly establishes that the compulsory retirement policy of the defendant was an issue extensively discussed during the negotiation of the March 13, 1945, contract, but there was a failure to reach an agreement upon such issue. It most certainly is not necessary for me to include in this memorandum the reasoning,

logic and authorities upon which the Court of Appeals relied in reversing the District Court in the Nichols case, because such information is readily available on pages 398–402 of 229 F.2d. The Court of Appeals in its reversal of the Nichols case, having clearly laid down the law to be applied, remanded the case to the District Court for further proceedings consistent with the views expressed therein.

Is the law of the Nichols case upended and reduced to no value in the instant case as a result of the decisions of the United States Supreme Court in June of 1960 in the American Manufacturing Company, Warrior & Gulf Navigation Company, and Enterprise Wheel & Car Corporation cases, supra, and the recent decision of the Ohio Supreme Court in Cantor v. Berkshire Life Ins. Co., 171 Ohio St. 405, 171 N.E.2d 518, decided December 28, 1960? These United States Supreme Court decisions of June 20, 1960, have been the subject of consideration by the Court of Appeals for the Sixth Circuit in two cases—the first being Local 791, International Union of Electrical, Radio and Machineworkers, AFL-CIO v. Magnavox Co., 286 F.2d 465, decided February 13, 1961; and the second being Vulcan-Cincinnati, Inc. v. United Steelworkers of America, AFL-CIO, 289 F.2d 103, 107, decided April 14, 1961. In these two cases it was contended that the decisions of the Court of Appeals were in conflict with the three cases decided by the United States Supreme Court in June of 1960. In Local 791, etc. v. Magnavox Co., the Court of Appeals found the controlling facts distinguished it from the adjudications of the Supreme Court and did not further discuss the Supreme Court decisions. However, in Vulcan-Cincinnati, Inc. v. United Steelworkers, etc., the Court of Appeals did appraise the scope of the three United States Supreme Court cases as follows:

"Although these cases extend the scope of arbitration, they adhere to certain well established principles. First, that no contracting party can be compelled to submit to arbitration any matter which he has not agreed to submit. United Steelworkers v. Warrior & Gulf Navigation Co., supra, 363 U.S. at page 582, 80 S.Ct. at page 1353. Second, the question of whether a particular matter is arbitrable is for the courts to decide."

The contract under consideration in the instant case is the same contract as that which was under consideration in the Nichols case, supra. The no-strike clause included in the agreement here under consideration is as follows:

"1. Should differences arise between the Company and the Union as to the interpretation or application of or compliance with the provisions of this Agreement or as to any question relating to the wages, hours of work and other conditions of employment or any changes therein, of any employee, there shall be no interruption or impeding of the work, work stoppages, strikes or lockouts on account of such differences, but an earnest effort shall be made to settle the matter promptly in accordance with the following procedure except as specific procedures for the handling of specific subjects are provided elsewhere in this Agreement.

"2. Any employee who believes that he has a justifiable request or complaint may discuss the request or complaint with his foreman, with or without the assistant grievance committeeman or grievance committeeman being present, as he may elect, in an attempt to settle same.

"Any such request or complaint not disposed of within two (2) days and filed in writing as later set forth herein shall constitute a grievance within the meaning of this Section 9—Adjustment of Grievances. * * *." (Thereafter, the grievance procedures are set forth.) (Plaintiff's Ex. 1.)

The no-strike clause included in the agreement under consideration in the Warrior & Gulf case, supra, is as follows:

"Should differences arise between the Company and the Union or its members employed by the Company as to the meaning and application of the provisions of this Agreement, or should any local trouble of any kind arise, there shall be no suspension of work on account of such differences but an earnest effort shall be made to settle such differences immediately in the following manner:

"A. For Maintenance Employees:

"First, between the aggrieved employees, and the Foreman involved;

"Second, between a member or members of the Grievance Committee designated by the Union, and the Foreman 'and Master Mechanic. * * *." (Thereafter, the grievance procedures are set forth.) 363 U.S. 576, 80 S.Ct. 1349.

Throughout the trial of this case the parties have treated and regarded the no-strike clause in the agreement as "an absolute no-strike clause" and, when considered in conjunction with the provisions of Section 9(f) and Section 11 of said agreement, it is my conclusion that the no-strike clause in the contract here under consideration is an absolute no-strike clause. In Warrior & Gulf, supra, 363 U.S. at page 578, 80 S.Ct. at page 1351, the Court said:

"For arbitration of labor disputes under collective bargaining agreements is part and parcel of the collective bargaining process itself.

"The collective bargaining agreement states the rights and duties of the parties. It is more than a contract; it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate. * * * The collective agreement covers the whole employment relationship. It calls into being a new common law—the common law of a particular industry or of a particular plant."

At pages 580 and 581 of 363 U.S., at page 1351 of 80 S.Ct., the Court further said:

"A collective bargaining agreement is an effort to erect a system of industrial self-government. * *; 'some provide more or less specific standards (the written document) which require reason and judgment in their application; and some do little more than leave problems to future consideration with an expression of hope and good faith.' * * But the grievance machinery under a collective bargaining agreement is at the very heart of the system of industrial self-government. Arbitration is the means of solving the unforeseeable by molding a system of private law for all the problems which may arise and to provide for their solution in a way which will generally accord with the variant needs and desires of the parties. * * *.

"Apart from matters that the parties specifically exclude, all of the questions on which the parties disagree must therefore come within the scope of the grievance and arbitration provisions of the collective agreement. The grievance procedure is, in other words, a part of the continuous collective bargaining process. It, rather than a strike, is the terminal point of a disagreement."

At pages 583 and 584 of 363 U.S., at page 1353 of 80 S.Ct., the Court further said:

"Collective bargaining agreements regulate or restrict the exercise of management functions; they do not oust management from the performance of them. * * * A collective bargaining agreement may treat only with certain specific practices, leaving the rest to management but subject to the possibility of work

stoppages. When, however, an absolute no-strike clause is included in the agreement, then in a very real sense everything that management does is subject to the agreement, for either management is prohibited or limited in the action it takes, or if not, it is protected from interference by strikes. This comprehensive reach of the collective bargaining agreement does not mean, however, that the language, 'strictly a function of management,' has no meaning.

"* * * Every grievance in a sense involves a claim that management has violated some provision of the agreement.

"Accordingly, 'strictly a function of management' must be interpreted as referring only to that over which the contract gives management complete control and unfettered discretion."

I find as a fact that the agreement involved here provides for arbitration of disputes respecting the interpretation and application of the agreement, that for a number of years before the execution of the agreement of March 13, 1945, the defendant and the union repeatedly discussed the compulsory retirement policy then being enforced by the defendant, and that the union tried, but without success, to reach an agreement acceptable to the parties as to the right of the defendant to enforce its compulsory retirement policy. I further find that the union and the plaintiffs had been for many years fully aware of the operation and practices by the defendant of its compulsory retirement policy, and the union repeatedly asserted at the time of the negotiation and execution of the agreement of March 13, 1945, as well as at the negotiations of preceding agreements, that under the terms of the collective bargaining agreements the defendant did not have the right to put into effect and enforce a compulsory retirement policy terminating the employment of employees at the age of sixty-five.

The foregoing findings rest upon direct as well as circumstantial evidence. Though it cannot be said that each of the plaintiffs was familiar with the details of the compulsory retirement policy, and it was admitted that no bulletins or other writings describing the policy were ever posted by the defendant, yet every witness who testified on the subject acknowledged that he had heard about the retirement of employees at age sixty-five, and some stated that they had discussed it with other workmen as well as with union representatives. Considering the number of years each was employed by the defendant, the action and protests of their union on the subject, the number of grievances filed, and that in excess of seven hundred and fifty men in the same plant had been retired compulsorily pursuant to the policy, it is inconceivable that the plaintiffs would not know of the compulsory retirement policy. The defendant, by personal interview, notified each of the plaintiffs of the compulsory retirement policy in the month of each plaintiff's sixty-fifth birthday. There were some slight variations in this practice due to the fact that many of the employees were foreign-born and there were discrepancies as to their birth dates, and in a few instances the records were inaccurate.

One fact not in dispute is that all of the plaintiffs were members of the United Steelworkers of America—CIO, one of the contracting parties in the collective bargaining agreement involved herein. In the course of the trial, considerable evidence bearing upon the foregoing findings of fact, as well as the circumstances surrounding the contracting parties, was permitted in compliance with the rule that the greatest latitude should be given in developing the surrounding situations and conditions attending the negotiations for the consummation of a contract; and the language employed in a contract should be construed in the light of circumstances surrounding the contracting parties at the time. Circumstantial evidence is competent to prove a contract.

Section 10 of the collective bargaining agreement provides as follows:

"The management of the works and the direction of the working forces, including the right to hire, suspend or discharge for proper cause, or transfer, *and the right to relieve employees from duty* because of lack of work *or for other legitimate reasons,* is vested exclusively in the Company, provided that this will not be used for purposes of discrimination against any member of the Union." (Emphasis added.)

In Warrior & Gulf, 363 U.S. 574, at page 583, 80 S.Ct. 1347, at page 1353, the Supreme Court said:

"*Collective bargaining agreements regulate or restrict the exercise of management functions; they do not oust management from the performance of them.* Management hires and fires, pays and promotes, supervises and plans. All these are part of its function, and absent a collective bargaining agreement, it may be exercised freely except as limited by public law and by the willingness of employees to work under the particular, unilaterally imposed conditions. A collective bargaining agreement may treat only with certain specific practices, *leaving the rest to management* but subject to the possibility of work stoppages." (Emphasis added.)

The collective bargaining agreement makes no specific reference to a compulsory retirement plan or policy. What is more important, the collective bargaining agreement contains no provision excluding the maintenance of such a policy by the defendant, nor is there a provision excepting the initiation and enforcement of such a policy from the grievance procedure of the agreement. The collective bargaining agreement, therefore, *did not deprive the defendant of its right to pursue a policy of compulsory retirement.* This conclusion of law rests upon the decision of the United States Supreme Court in the three cases decided in June of 1960, supra, as well as upon the decision of the Court of Appeals in the Nichols case, supra.

Coming now to a consideration of the compulsory retirement policy of the defendant, I find that each of the plaintiffs was a citizen and resident of the State of Ohio, that the original defendant, the National Tube Company, was a corporation as alleged in the complaint and was merged with the United States Steel Corporation, which has been substituted as a party defendant, and that the defendant did maintain an office and steel plant in the City of Lorain, Ohio, and did employ approximately 11,500 men. I further find that the jurisdictional requirements have been established.

I further find that the United Steelworkers of America—CIO is a labor union and was the duly certified collective bargaining agent at the times alleged and for the employees alleged.

I further find that the plaintiffs were employees of the defendant during the periods set forth in this memorandum and that each was a member of the aforesaid union and, in consideration of this facet of the case, I adopt all findings of fact hereinbefore set forth.

As is usual in every large industrial enterprise, the defendant maintained in its office numerous departments which were devoted to the making and keeping of its records, some of which were temporary in nature while others were permanent. Some records, depending upon bookkeeping needs, were sent to more than one department and were characterized differently in each department.

Plaintiffs' counsel, defendant's counsel, and employees of the defendant examined and studied thousands of documents contained in the files and records of the defendant, and from this examination and study the parties presented and had admitted hundreds of such documents which bore upon or threw some light upon the existence, operation and enforcement of the retirement policy. To assist the Court, counsel prepared summaries of the exhibits.

150

I have heretofore called attention to the fact that the exhibits, upon which the summaries were based, served several purposes in the bookkeeping procedure and bore different characterizations. The summaries prepared by the plaintiffs were intended to show discrepancies which would amount to a lack of uniformity and a discrimination in the operation and enforcement of the retirement plan. For instance, the documents reveal that, during the world conflict known as World War II, and in response to a patriotic all-out effort, the employees who attained the age of sixty-five during that period were continued in the employ of the defendant for the duration of the war, if they so desired. In addition to those employees who arrived at the age of sixty-five during the war and were continued in their employment if they so desired, the defendant called upon all of its old employees who had been retired prior to this period and some of them were rehired. It is to be noted that insofar as those employees who arrived at the age of sixty-five during the war are concerned, all were retired at or about their sixty-fifth birthday, pursuant to the compulsory retirement plan, and were rehired for the duration of the war, except that the defendant delayed the retiring and rehiring of a few employees who became sixty-five at the beginning of this war program and before the details of the rehiring program had been decided upon. To condemn the compulsory retirement plan for such a digression is fantastic and demonstrates the desperation of plaintiffs' counsel in his efforts to show discrimination and lack of uniformity in the face of the fact that, except for slight variations, every employee who arrived at the age of sixty-five was retired. In my judgment, it was unbecoming of plaintiffs' counsel to attempt to invalidate the compulsory retirement policy based upon the actions and practices of the defendant during the World War II emergency. The desperate need of an all-out effort, especially in an industry such as the defendant's, does not deserve to be so lightly dealt with.

It would be ridiculous to hold that the defendant pursued its compulsory retirement plan discriminatorily and not uniformly by reason of the slight and insignificant variations and discrepancies shown in the exhibits and complained of by the plaintiffs. The present complaint by the plaintiffs that the retirement plan was discriminatorily enforced and lacked uniformity is further weakened by the disclosure in the evidence that prior to the trial on this issue the plaintiffs and the union had offered no proof of such complaint; instead, they relied upon their contention that the pursuing of the compulsory retirement plan was invalid *per se*.

The defendant has proved beyond any doubt that prior to, at the time of, and subsequent to the execution of the collective bargaining agreement of March 13, 1945, there was in existence the alleged compulsory retirement policy and that said policy was pursued uniformly and without discrimination. There is a complete absence of any showing that the policy pursued by the defendant was a discharge under the guise of retirement, or that it was in substance merely a subterfuge to avoid defendant's contractual obligation against discharge. Since the collective bargaining agreement did not prohibit the continued enforcement of the compulsory retirement policy, there was no breach of the plaintiffs' contractual rights in the enforcement of the policy as to them.

There is no dispute that the collective bargaining agreement involved here provides for arbitration of disputes respecting the interpretation and application of the agreement. Said grievance and arbitration procedures are clear and unambiguous and therefore it is not necessary to recite those provisions in this memorandum.

The cause of action alleged by each plaintiff is that he was wrongfully discharged pursuant to a compulsory retirement policy which terminated his employment solely because he had attained

a certain age. It has been clearly established that such a complaint, under the terms of the collective bargaining agreement involved herein, is a grievance arbitrable within the provisions of the collective bargaining agreement. None of the plaintiffs herein availed themselves of the provisions of the grievance and arbitration procedures to the point of arbitration.

The defendant contends that the procedures for grievance and arbitration included in the March 13, 1945, contract constitute the exclusive remedy available to plaintiffs and foreclose completely the jurisdiction of this Court over the controversy here involved.

The plaintiffs contend that because the defendant admittedly took the position that the right to enforce the compulsory retirement plan was not arbitrable, therefore, the defendant is estopped from asserting and maintaining a defense that the plaintiffs failed to exhaust the remedy of the grievance and arbitration procedures. The United States Supreme Court in American Mfg. Co., supra, beginning at page 570 of 363 U.S., at page 1364 of 80 S.Ct. said:

"To be sure, since arbitration is a creature of contract, a court must always inquire, when a party seeks to invoke its aid to force a reluctant party to the arbitration table, whether the parties have agreed to arbitrate the particular dispute. In this sense, the question of whether a dispute is 'arbitrable' is inescapably for the court.

"On examining the arbitration clause, the court may conclude that it commits to arbitration any 'dispute, difference, disagreement, or controversy of any nature or character.' With that finding the court will have exhausted its function, except to order the reluctant party to arbitration."

█ To successfully invoke the doctrine of estoppel, every fact essential to an estoppel must be clearly and satisfactorily proved by a preponderance of the evidence, 31 C.J.S. Estoppel § 162, pp. 457, 458; and each of five elements must be present to sustain the claim of an estoppel:

1. False representation or concealment of material facts by words, acts, conduct or silence, where there is a duty to speak,

2. By a person with knowledge, actual or constructive, of the true facts,

3. To a person without as great or sufficient knowledge,

4. With the intention that the misrepresentation or concealment shall be acted on by the latter person,

5. Who must so rely and act thereon, or omit to do some act, to his injury or prejudice. A change of position which will fulfill this element of estoppel must be actual, substantial and justified.

31 C.J.S. Estoppel § 67, p. 254 et seq.; 20 O.Jur.2d 498, et seq.; Gruber v. Savannah River Lumber Co., 4 Cir., 1924, 2 F.2d 418, 425; Grouf v. State National Bank, 8 Cir., 1930, 40 F.2d 2, 7; Fleming v. City of Steubenville, 44 Ohio App. 121, 184 N.E. 701.

█ The plaintiffs failed to offer substantial proof in support of any of the five elements of estoppel, therefore the defendant is not estopped from the defense that the procedures for grievance and arbitration constitute the exclusive remedy available to plaintiffs.

The collective bargaining agreement (Plaintiffs' Exhibit 1) contains the following provisions:

"Should differences arise between the Company and the Union as to the interpretation or application of or compliance with the provisions of this Agreement or as to any question relating to the wages, hours of work and other conditions of employment or any changes therein, of any employee, * * * an earnest effort shall be made to settle the matter promptly in accordance with the following procedure [the grievance and

152

arbitration procedure]." (Plaintiffs' Exhibit 1.)

"Whenever either party concludes that further conferences in the procedures set forth [in the grievance procedure] * * * cannot contribute to the settlement of a grievance, the dissatisfied party may, * * * appeal the grievance to the Board." (Plaintiffs' Exhibit 1.)

"It is agreed by the parties hereto that procedure provided in this Section [grievance and arbitration procedure], if followed in good faith by both parties, is adequate for fair and expeditious settlement of any grievances arising in any plant of the Company. It is understood and agreed that grievances to be considered must be filed promptly after the occurrence thereof." (Plaintiffs' Exhibit 1.)

"The decision of the Board on any matter which shall have been submitted to it in accordance with the provisions of this Agreement shall be final and binding upon the Company, the Union and all employees concerned." (Plaintiffs' Exhibit 1.)

The above set forth provisions of the collective bargaining agreement, when interpreted and applied in accord with the three decisions of the United States Supreme Court in June of 1960, leave no doubt that the grievance and arbitration procedures do constitute the exclusive remedy for the determination of any dispute under the contract; that the parties to the collective bargaining agreement bargained for the judgment and decision of a board of arbitration and that such decision would be final and binding upon the parties; and that, by the terms of the grievance and arbitration procedures contained in the agreement, the parties committed to arbitration even the question of the arbitrability of a dispute.

█ The law has long been settled that any party claiming to be aggrieved under a contract providing for grievance and arbitration, and containing also an absolute no-strike clause, may compel arbitration under the jurisdiction of this Court.

A great majority of the cases cited in the briefs of counsel were analyzed, interpreted and applied in the Nichols case, supra, and it would be vain and useless for me to review in detail the views of the Court of Appeals since they are fully reported in 229 F.2d beginning at page 396. Neither is it necessary for me to review in detail the additional authorities cited in counsel's briefs (but not considered in the Nichols case) for the reason that some are not applicable, nor do they require a modification or change in the law of the Nichols case.

█ It is my judgment, upon the evidence and the law, that the collective bargaining agreement of March 13, 1945, did not prohibit nor restrict the defendant's right to continue, during the effective dates of said agreement, to pursue and enforce its policy of the compulsory retirement of its employees, including the plaintiffs herein.

It is my further judgment that the acts and conduct of the defendant, as alleged in plaintiffs' complaint, constituted a grievance within the provisions of the collective bargaining agreement sued upon and that the grievance and arbitration procedures provided in said agreement were the exclusive remedy for the determination of the rights and claims alleged in the plaintiffs' complaint. This ruling and judgment renders it unnecessary to consider other defenses asserted by the defendant.

Judgment will be rendered in favor of the defendant and against the plaintiffs upon the plaintiffs' complaint.

This memorandum constitutes findings of fact and conclusions of law pursuant to Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A.

An order may be prepared in accordance with the foregoing.